**Cullen | Dykman**

Cullen and Dykman LLP
80 State Street, Suite 900
Albany, New York 12207

**CHRISTOPHER E. BUCKEY**
**PARTNER**
DIRECT: (518) 788-9406
CBUCKEY@CULLENLLP.COM

October 10, 2024

**VIA ECF-PACER**
Magistrate Judge Miroslav Lovric
United States District Court
Northern District of New York
Federal Building and U.S. Courthouse
15 Henry Street
Binghamton, New York 13901

Re:     *Adirondack Trust Company v. Maha Laxmi Corp.*, *et. al.*
        1:21-cv-01334-DNH-ML (N.D.N.Y.)

Dear Judge Lovric:

This firm represents Plaintiff Adirondack Trust Company ("ATC") in the above-referenced matter. Pursuant to Local Rule 37.1, we write to request a pre-motion conference to request a protective order under Federal Rule of Civil Procedure 26(c). Defendant Niral Patel has refused to stop sending emails and texts to ATC's employees, officers and board members, at their work and personal email addresses, relating to this litigation. A protective order is necessary to stop this abusive and harassing behavior and to protect ATC's employees, officers and board members from intimidation, embarrassment, and unnecessary burden and expense.

Additionally, ATC requests this Court enter a protective order limiting Defendants' secondary use of discovery obtained in this litigation. ATC previously proposed that the parties enter into a routine stipulated protective order with confidentiality designations. Defendants have rejected ATC's proposal and have recently referenced confidential information on the "Adirondack Mistrust Company" website that Mr. Patel illegally registered. Mr. Patel also has used ATC's discovery materials to obtain the personal email addresses of four of ATC's Board of Directors and recently sent a mass email regarding this litigation to those four board members along with ATC's officers and other board members.

I.      **A Protective Order is Necessary to Stop Mr. Patel from Harassing ATC Personnel**

"[A] party or counsel for a party 'may not directly contact witnesses who are employees of an opposing party and represented by an attorney.'" *Fischer v. Verizon N.Y., Inc.*, No. 18-cv-

FOUNDED 1850

**NEW YORK**     **NEW JERSEY**     **WASHINGTON DC**

601.44000 21210892

11628 (RA) (OTW), 2020 U.S. Dist. LEXIS 157936, at *12 (S.D.N.Y. Aug. 31, 2020); *Shim-Larkin v. City of New York*, No. 16-cv-6099 (AJN), 2017 U.S. Dist. LEXIS 177197, 2017 WL 4862790, at *3 (S.D.N.Y. Oct. 25, 2017) (upholding magistrate judge's order that New York City employees only be contacted through counsel).[1]

Despite ATC's repeated objections, Mr. Patel has directly communicated with ATC personnel through texts and emails while this litigation is pending. On May 3, 2022, for example, Mr. Patel sent a text message to ATC officer Edward Hart with a picture of Charles V. Wait, ATC's Chairman of the Board, with his granddaughter. (Affidavit of Charles V. Wait, Jr., sworn to October 9, 2024 ["Wait Aff."] Ex. A). Mr. Wait was not aware that Mr. Patel had taken a picture of him with his granddaughter.

On July 7, 2022, Mr. Patel attempted to speak with Charles V. Wait, Jr. regarding this litigation. The next day, Mr. Patel texted Mr. Wait asking to speak again. After ATC's counsel informed Defendants' counsel that Mr. Wait would not speak to Mr. Patel regarding the litigation, Mr. Patel sent Mr. Wait a text message acknowledging that the attorneys had spoken and that he would "respectfully comply" with ATC's request not to speak with Mr. Patel regarding the litigation. (Wait Aff. Ex. B).

On August 25, 2023, Mr. Patel emailed Charles V. Wait, Sr., Charles V. Wait, Jr., ATC's President and CEO, and two other ATC officers regarding a payment to be made to SBA. (*Id.* Ex. C). Since Mr. Patel referenced this litigation in the email to the ATC officers, I emailed Defendants' counsel and again requested that Mr. Patel stop communicating with ATC regarding the litigation. Defendants' counsel did not disagree that Mr. Patel is prohibited from directly communicating with ATC personnel regarding the litigation. Counsel argued that, as an ATC customer, Mr. Patel must be able to communicate with ATC regarding banking transactions. (Buckey Dec. Ex. A).

On April 16, 2024, Charles V. Wait, Jr. received an email from leroybrown@posteo.com with the subject line "Golden Corral Covid relief boondoggle." (Wait Aff. Ex. D). Posteo is an email provider that offers anonymous email accounts. In this email, the sender claimed that Mr. Wait's "bank has an exposure in litigation exceeding $20m." The sender also stated that "[w]e will let the US Department of Treasury and the Federal Reserve Bank know the same as a courtesy. But you should look into this, because someone could accuse you of being dishonest." Mr. Patel has denied sending this email.

---

[1] In their Amended Rule 26 Disclosures, Defendants identify Edward Hart, Michael O'Connell, Michael Murray, Natalie Wait, Jack Arnold, Charles V. Wait, Sr., Charles V. Wait, Jr, and all the members of the Board of Directors as people likely to have discoverable information and thus likely witnesses in this case. (Declaration of Christopher E. Buckey dated October 9, 2024 ["Buckey Dec."] Ex. H). Defendants also noticed Edward Hart, Michael O'Connell, Michael Murray, Natalie Wait, Charles V. Wait, Jr. and Charles V. Wait, Sr. for depositions in this action.

Mr. Patel's denial is not credible. At issue in this litigation are the PPP loans made to Mr. Patel's Golden Corral businesses. Thus, the email clearly is referencing Mr. Patel and this litigation. Additionally, the reference to "exposure in litigation exceeding $20m" aligns with the excessive damages claimed by Defendants in connection with their counterclaims. For this reason, ATC views this email as a threat sent by or on behalf of Mr. Patel through an anonymous email provider.

The frequency and menacing tone of Mr. Patel's direct communications recently increased. On September 1, 2024, for example, Mr. Patel sent a mass email to ATC's officers and its entire Board of Directors[2] regarding this litigation. (*Id.* Ex. E). Mr. Patel accused ATC of having governance deficiencies under Charles V. Wait, Jr.'s leadership and of lacking "FDIC-compliant board oversight." Mr. Patel also claimed that Mr. Wait has not kept ATC's board members "adequately informed." Mr. Patel closed the mass email by promising that the email would be his "final direct communication."

The next day, however, Mr. Patel sent a LinkedIn message to Robert Scheurer, ATC's Assistant Treasurer. (*Id.* Ex. F). Mr. Patel admitted that he sent the message via LinkedIn because "he didn't want to email [Mr. Scheurer] on the ATC servers." Mr. Patel again referenced this litigation and advised Mr. Scheurer that "as this war escalates and I push forward to clear my own name, I hold no ill will towards you and the incredible team that works at the branch level of ATC."

On September 19, 2024, ATC's counsel requested in writing that Defendants' counsel meet and confer regarding Mr. Patel's improper direct communications with ATC personnel. (Buckey Dec. Ex. C). ATC also requested the meet and confer to revisit Defendants' unwillingness to agree to a routine stipulated protective order with confidentiality designations.

Five days later, and despite his promise to end direct communications, Mr. Patel texted Charles V. Wait, Sr. (Wait Aff. Ex. G). Mr. Patel again referenced the subject of this litigation and claimed that he "told my attorney to remove you from my deposition list. You don't deserve to be paraded like that at this juncture in your career for the missteps of others."

On October 2, 2024, and as a result of Mr. Patel's harassment and attempted intimidation of ATC employees, officers and board members, ATC notified Mr. Patel and Defendant Nirmala Patel that ATC is closing their respective deposit accounts. (Wait Aff. Ex. H). The accounts will be closed as of November 1, 2024. Effectively immediately, ATC has prohibited Mr. Patel from entering any ATC branch, office and/or location.

---

[2] Mr. Patel sent the email to four of ATC's board members at their respective personal email addresses. Mr. Patel likely obtained those email addresses from the Appendix ATC provided with its Supplemental Privilege Log on August 8, 2024 in accordance with the Court's directives at the June 17, 2024 hearing.

On October 3, 2024, counsel met and conferred regarding several issues related to this litigation, including ATC's repeated requests that Mr. Patel refrain from contacting or communicating with ATC personnel regarding the subject of this litigation (the "October 3 Meet and Confer"). ATC proposed during the October 3 Meet and Confer that the parties agree to a stipulation and order prohibiting Mr. Patel from contacting or communicating with ATC personnel regarding the subject of this litigation. On October 4, 2024, we provided the proposed stipulation and order to Defendants. (Buckey Dec. Ex. D). To date, Defendants have not taken a position regarding the proposed stipulation and order.

Under Federal Rule of Civil Procedure 26(c), the Court, for "good cause" and in favor of "any person from whom discovery is sought," has the power to "issue an order to protect a party or person from annoyance [or] embarrassment." Fed. R. Civ. P. 26(c)(1). Good cause is established when a party demonstrates "a particular need for protection." *Austin v. Fordham Univ.*, No. 23 Civ. 4696 (JLR) (GS), 2024 U.S. Dist. LEXIS 112852, at *4 (S.D.N.Y. June 25, 2024).

Courts have regularly granted protective orders to prohibit litigants from directly communicating with an adversary's employees where the adversary is represented by counsel. *Mulvihill v. Ont. Cty.*, No. 13-CV-6268, 2014 U.S. Dist. LEXIS 201734, at *31 (W.D.N.Y. Feb. 13, 2014) (ordering the plaintiff to refrain from contacting the defendants or their employees "for any purposes related to this lawsuit, unless such contact is specifically authorized by the Court or provided for by the Federal Rules of Civil Procedure"); *Frank Liu v. Nielsen Co. US LLC*, No. 22-CV-9084 (JHR) (OTW), 2024 U.S. Dist. LEXIS 169462, at *1 (S.D.N.Y. Sep. 16, 2024) (granting protective order directing pro se plaintiff to refrain from contacting employees of defendants after defendant sent mass emails to employees' personal and work email addresses regarding the litigation); *Leadsinger, Inc. v. Cole*, No. 05 Civ. 5606 (HBP), 2006 U.S. Dist. LEXIS 55550, at *8 (S.D.N.Y. Aug. 4, 2006) (directing defendant "to refrain from directly contacting plaintiff's principals and their family members").[3]

Here, there is a good cause for a protective order because Mr. Patel has repeatedly refused to stop contacting and directly communicating with ATC personnel regarding this litigation. The protective order is necessary to protect ATC personnel from Mr. Patel's harassment and attempted intimidation related directly to this litigation.

---

[3] Courts also have granted injunctive relief enjoining harassing communications by litigants. *See, e.g., United Artists Corp. v. United Artist Studios, LLC*, No. CV 19-828-MWF, 2019 U.S. Dist. LEXIS 220077, at * 34 (C.D. Cal. Oct. 17, 2019) (finding that any direct communication by the defendant with the plaintiff's employee "during the pendency of the litigation in any manner or for any purpose would constitute harassment and be performed with the intent of intimidation"); *Myart v. Taylor*, No. SA:16-CV-455-DAE, 2016 U.S. Dist. LEXIS 130953, at *13 (W.D. Tex. Sep. 26, 2016) (enjoying the plaintiff "from contacting the named Defendants regarding any matter currently addressed in the instant suit, for the pendency of this lawsuit").

The requested protective order should prohibit Mr. Patel from contacting or communicating with ATC employees, officers, or board members concerning the subject matter of this litigation without the presence or consent of ATC's counsel or without authorization by specific order of this Court.[4] Thus, the requested protective order is narrow in scope and would not hamper Mr. Patel's ability to meaningfully participate in the litigation. Additionally, since ATC closed Mr. Patel's deposit accounts, Mr. Patel no longer needs to communicate with ATC regarding banking transactions.[5] Since Mr. Patel has repeatedly refused to stop this behavior, the protective order should state that further direct communications regarding the subject of this litigation will result in appropriate sanctions and/or relief, up to and including dismissal of Defendants' counterclaims.

As detailed above, ATC has attempted to meet and confer regarding this matter. For well over a year, ATC has requested that Mr. Patel stop communicating with ATC personnel regarding this litigation. Following Mr. Patel's September 1, 2024 mass email and his September 2, 2024 LinkedIn message to Mr. Scheurer, ATC again raised this issue in the September 19, 2024 correspondence to Defendants' counsel and requested a meet and confer. Five days later, and presumably with actual notice that ATC had notified his attorneys that ATC intended to seek the Court's intervention regarding Mr. Patel's improper communications, Mr. Patel again texted Charles V. Wait, Sr. regarding this litigation.

Additionally, the parties discussed this issue during the October 3 Meet and Confer and ATC provided Defendants with a proposed stipulation and order prohibiting Mr. Patel from contacting or communicating with ATC personnel. To date, Defendants have not responded to the proposed stipulation and order. We understand that Defendants' attorneys currently are in a trial for another matter and have limited availability to respond to this issue. For this reason, ATC does not object to extending the time within which Defendants must respond to this request. In the meantime, if Defendants agree to the proposed stipulation and order, ATC will withdraw this request.

## II.    The Court Should Enter a Standard Protective Order Limiting Secondary Use of Discovery

On March 27, 2024, we emailed Defendants' counsel a proposed stipulated protective order with confidentiality designations and requested Defendants' proposed edits. (Buckey Dec. Ex. E). On the same day, counsel advised us that Defendants "do not wish to enter into a confidentiality stipulation and think any benefit of entering into one has already been eliminated by what is already on the docket in federal and state court." (*Id.* Ex. F).

---

[4] The direct communications also tangibly impact this litigation as Mr. Patel has directed his text messages and emails to witnesses identified by Defendants in their Rule 26 disclosures, including Charles V. Wait, Sr., Charles V. Wait, Jr. Natalie Wait, Edward Hart and the entire Board of Directors.

[5] Mr. Patel also has several loans with ATC. He will be able to make online payments for those loans.

Mr. Patel's recent actions confirm that a routine protective order is necessary to limit secondary use of ATC's discovery. As the Court is aware, Mr. Patel registered web domains containing permutations of Adirondack Trust, including the "Adirondack Mistrust Company" domain, and of the personal names of ATC's officers and outside counsel. As referenced in his September 1, 2024 mass email to ATC's officers and board members, Mr. Patel recently has been active on the "Adirondack Mistrust Company" website. Among other things, he referenced privileged settlement discussions with ATC regarding this litigation and a "flurry of emails" between, among others, ATC's outside counsel, which were "revealed by [ATC's] privilege log." (*Id.* Ex. G).

In our September 19, 2024 letter, we requested that Defendants reconsider their refusal to enter into a confidentiality stipulation. (Buckey Dec. Ex. C). During the October 3 Meet and Confer, Defendants' counsel advised us that Defendants will not enter into a confidentiality stipulation. Defendants have not identified any purported prejudice they would suffer from the confidentiality stipulation.

The confidentiality stipulation proposed by ATC is narrowly tailored and contains standard confidentiality provisions and a procedure for challenging those designations. Under Fed. R. Civ. P. 26(c), the Court is authorized to issue an identical or substantially similar protective order. *See DeCarlo v. Archie Comic Publ'ns, Inc.*, No. 00 Civ. 2344 (LAK), 2000 U.S. Dist. LEXIS 12137, at * 2 (S.D.N.Y. 2000) (entering "routine" protective order submitted by defendant over objection of plaintiff).

The Court should reject any claim by Defendants that they are entitled to publish documents and information obtained from ATC through discovery in this litigation. *See Martinez v. Lvnv Holding LLC*, No. 14-cv-677 (RRM), 2015 U.S. Dist. LEXIS 68244, at *4-5 (E.D.N.Y. May 27, 2015) ("As the Supreme Court has recognized, litigants do not have 'an unrestrained right to disseminate information that has been obtained through pretrial discovery' and 'restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information.'") (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 31, 104 S. Ct. 2199, 81 L. Ed. 2d 17 (1983)).

As set forth above, ATC has attempted to meet and confer to resolve this issue. On March 27, 2024, Defendants' counsel informed us that Defendants are unwilling to agree to a confidentiality stipulation. Defendants' counsel reiterated Defendants' position during the October 3 Meet and Confer.

Please contact me if the Court has any questions.

601.44000 21210892

October 10, 2024
Page No.: 7

Respectfully,

Christopher E. Buckey

cc:    All Counsel of Record (via ECF-PACER)

601.44000 21210892