## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

ADIRONDACK TRUST COMPANY,

*Plaintiff*,

v.

MAHA LAXMI CORP., MAHA LAXMI II
CORP., JAGDAMBA INC., JAGDAMBA II
CORP., JAGDAMBA III CORP., JAGDAMBA V
CORP., JAGDAMBA VI CORP., NORTHEAST
DINING & LODGING, INC., POUGHKEEPSIE
GC, INC., SYRACUSE GC, INC., NIRAL A.
PATEL, and NIRMALA A. PATEL,

*Defendants.*

Index No. 1:21-cv-01334-DNH-ML

## ATC'S REPLY MEMORANDUM OF LAW
## IN SUPPORT OF ATC'S MOTION FOR SUMMARY JUDGMENT

CULLEN AND DYKMAN LLP
80 State Street, Suite 900
Albany, New York 12207
(518) 788-9440

*Of Counsel:*

Christopher E. Buckey, Esq.
Kristen A. Davis, Esq.

*Counsel for Plaintiff*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ......................................................................................................................... 1

I.   DEFENDANTS' LIABILITY FOR THE ATTORNEYS' FEES INCURRED BY ATC
     AND SBA REMAINS A LIVE CONTROVERSY ....................................................... 1

   A.   The Assignments of the PPP Notes to SBA in 2021 Did Not Divest ATC of its Standing
        ............................................................................................................................ 1

   B.   ATC's Claims are Not Moot ................................................................................ 1

II.  ATC IS ENTITLED TO SUMMARY JUDGMENT ON ITS BREACH OF
     CONTRACT CLAIM ............................................................................................... 7

   A.   Defendants Failed to Raise an Issue of Fact Regarding their Misrepresentation of the
        Admitted USDA Loan Delinquency ................................................................... 8

   B.   Defendants Breached the PPP Notes By Failing to Use the PPP Funds to Retain
        Workers ............................................................................................................. 10

III. DEFENDANTS FAILED TO DEMONSTRATE FACTUAL ISSUES REGARDING
     ATC'S DCL CLAIMS ............................................................................................. 14

IV.  DEFENDANTS' COUNTERCLAIMS MUST BE DISMISSED ................................ 17

   A.   The Counterclaims Based on the Administrative Hold Placed on Nirmala Patel's
        Personal Account Must be Dismissed for Lack of Standing ................................ 17

   B.   The Breach of Contract Counterclaim Fails as a Matter of Law ........................... 19

   C.   The Unjust Enrichment and Conversion Counterclaims Must be Dismissed ............. 20

**TABLE OF AUTHORITIES**

Page(s)

**Federal Cases**

*A.I. Trade Fin. v. Petra Int'l Banking Corp.*,
   314 U.S. App. D.C. 122, 62 F.3d 1454 (1995)................................................................3

*Adarand Constructors, Inc. v. Slater*,
   528 U.S. 216 (2000).................................................................................................2

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*,
   106 F.3d 11 (2d Cir. 1997)..................................................................................18, 19

*Am. Int'l Grp. v. Bank of Am. Corp.*,
   712 F.3d 775 (2d Cir. 2013)...................................................................................10

*Anhui Aido Garment Co. v. Stern*,
   No. 24-cv-1572 (JGK), 2025 U.S. Dist. LEXIS 111398 (S.D.N.Y. June 12, 2025)................15

*Associated Gen. Contractors of Conn., Inc. v. City of New Haven*,
   41 F.3d 62 (2d Cir. 1994).......................................................................................7

*Ava Realty Ithaca, LLC v. Griffin*,
   652 F. Supp. 3d 255 (N.D.N.Y. 2023)........................................................................8

*Baltus-Michaelson v. Credit Suisse First Bos., LLC*,
   116 F. App'x 308 (2d Cir. 2004)...............................................................................19

*Barnhart v. Thomas*,
   540 U.S. 20, 124 S. Ct. 376 (2003).........................................................................10

*Cambridge Valley Machining, Inc. v. Hudson MFG LLC*,
   470 F. Supp. 3d 230 (N.D.N.Y. 2020)......................................................................16

*Campos v. V&B Inv. Guttenberg LLC*,
   No. 23-CV-1184 (DLC), 2024 U.S. Dist. LEXIS 48202 (S.D.N.Y. Mar. 19, 2024)...............15

*Chen v. Noem*,
   2025 U.S. App. LEXIS 12456 (2d Cir. May 22, 2025)....................................................3

*Cortlandt St. Recovery Corp. v. Hellas Telecomms.*,
   790 F.3d 411 (2d Cir. 2015)...................................................................................17

*Consumer Unified, LLC v. NRRM, LLC*,
  No. 23-CV-436-JFJ, 2024 U.S. Dist. LEXIS 180744 (N.D. Okla. Oct. 3, 2024) ...................... 4

*Cumberland Farms, Inc. v. Lexico Enters.*,
  No. 10-cv-4658 (ADS)(AKT), 2012 U.S. Dist. LEXIS 19890 (E.D.N.Y. Feb. 16, 2012) ......... 3

*Divane v. Krull Elec. Co.*,
  No. 95 C 6108, 2002 U.S. Dist. LEXIS 24333 (N.D. Ill. Dec. 16, 2002) ................................... 5

*DeJesus Rosario v. 251 E. 123rd St. Realty, LLC*,
  No. 20-cv-7387 (JSR), 2021 U.S. Dist. LEXIS 100664 (S.D.N.Y. May 27, 2021). ............ 5, 17

*Duringer v. Hartford Life Ins. Co.*,
  No. CV-74-M-DLC, 2014 U.S. Dist. LEXIS 207680 (D. Mont. Feb. 5, 2014).......................... 4

*Excelsior Cap. LLC v. Allen*,
  536 F. App'x 58 (2d Cir. 2013) ................................................................................................ 6

*First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*,
  871 F. Supp. 2d 103 (E.D.N.Y. 2012) ..................................................................................... 16

*Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc.*,
  528 U.S. 167 (2000) .................................................................................................................. 2

*Fund Liquidation Holdings LLC v. Bank of America Corp.*,
  991 F.3d 370 (2d Cir. 2021) ..................................................................................................... 1

*Gallagher's N.Y. City Steakhouse Franchising, Inc. v. NY Steakhouse of Tampa*,
  2011 U.S. Dist. LEXIS 149815 (S.D.N.Y. Dec. 29, 2011) ...................................................... 5

*Haley v. Pataki*,
  106 F.3d 478 (2d Cir. 1997) ..................................................................................................... 7

*Hilton v. Wright*,
  No. 9:05-CV-1038 (DNH), 235 F.R.D. 40 (N.D.N.Y. 2006)..................................................... 2

*In re Kovler*,
  253 B.R. 592 (Bankr. S.D.N.Y. 2000)............................................................................. 5, 6, 17

*In re Transcare Corp.*,
  2021 WL 4459733 (S.D.N.Y. Sept. 29, 2021) ........................................................................ 15

*J.P. Sedlak Assocs. v. Conn. Life & Cas. Ins. Co.*,
  No. 3:98 CV 145 (DFM), 2000 U.S. Dist. LEXIS 18947 (D. Conn. Mar. 31, 2000) ................ 6

*Juca v. Carranza*,
    2020 U.S. Dist. LEXIS 199251 (S.D.N.Y. Oct. 26, 2020) ....................................................... 7

*Lamar Advert. of Penn, LLC v. Town of Orchard Park, New York*,
    356 F.3d 365 (2d Cir. 2004) ........................................................................................... 3

*Lewis v. Cont'l Bank Corp.*,
    494 U.S. 472 (1990) .............................................................................................. 3, 4, 5, 6

*New York v. Salazar*,
    No. 6:08-CV-644 (LEK/GJD), 2009 U.S. Dist. LEXIS 90071 (N.D.N.Y. Sept. 29, 2009) ...... 10

*New York State Fed'n of Taxi Drivers, Inc. v. Westchester Cnty. Taxi and Limousine Com'n*,
    272 F.3d 154 [2d Cir. 2001] ........................................................................................... 2

*Ottley v. Sheepshead Nursing Home*,
    784 F.2d. 62 (2d Cir. 1986) ........................................................................................... 3

*Pincover v. J.P. Morgan Chase Bank, N.A.*,
    592 F. Supp. 3d 212 (S.D.N.Y. 2022) ............................................................................. 20

*Plaza Motors of Brooklyn, Inc. v. Cuomo*,
    No. 20-CV-4851 (WFK) (SJB), 2021 U.S. Dist. LEXIS 273917 (E.D.N.Y. Oct. 12, 2021) ...... 3

*Sos v. State Farm Mut. Auto. Ins. Co.*,
    No. 21-11769, 2023 U.S. App. LEXIS 22986 (11th Cir. Aug. 30, 2023) ................................. 7

*Steel Co. v. Citizens for Better Env't*,
    523 U.S. 83 (1988) ....................................................................................................... 2

*Stokes v. Wurtsboro*,
    818 F.2d 4 (2d Cir. 1987) ............................................................................................ 3, 4

*Tackney v. WB Imico Lexington Fee, LLC*,
    2014 U.S. Dist. LEXIS 132510 (S.D.N.Y. Sept. 19, 2014) ...................................................... 5

*Taylor v. City of N.Y.*,
    269 F. Supp. 2d 68 (E.D.N.Y. 2003) ................................................................................. 8

*Thole v. U.S. Bank, N.A.*,
    590 U.S. 538 (2020) .................................................................................................... 3, 5

*United States v. Alfano*,
    34 F. Supp. 2d 827 (E.D.N.Y. 1999) ................................................................................. 14

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
   549 F.3d 100 (2d. Cir. 2008) ............................................................................... 3

*Wash. Hosp. Ctr. Nat'l Rehab. Hosp. v. Collier*,
   292 U.S. App. D.C. 129, 947 F.2d 1498 (1991) ............................................... 4, 5

**State Cases**

*Cheek v. Brooks*,
   188 A.D.3d 785 (N.Y. App. Div. 2d Dep't 2020) ............................................... 14

*Steinberg v. Levine*,
   6 A.D.3d 620 (N.Y. App. Div. 2d Dep't 2004) .................................................. 16

**Federal Statutes**

28 U.S.C. § 1361 .................................................................................................... 3

28 U.S.C. § 2412(d)(1)(A) ..................................................................................... 3

29 U.S.C. § 1132 .................................................................................................... 3

29 U.S.C. §§ 1001 .................................................................................................. 3

42 U.S.C. § 1983 .................................................................................................... 3

42 U.S.C. § 1988 ................................................................................................. 2, 3

42 U.S.C. § 11046 .................................................................................................. 3

**Federal Regulations**

31 CFR 285.13(d) ......................................................................................... 8, 9, 10

## PRELIMINARY STATEMENT

Plaintiff Adirondack Trust Company ("ATC"), by and through its attorneys, Cullen and Dykman LLP, respectfully submits this memorandum of law in further support of ATC's summary judgment motion and in opposition to Defendants' summary judgment motion.

## ARGUMENT

### I.    DEFENDANTS' LIABILITY FOR THE ATTORNEYS' FEES INCURRED BY ATC AND SBA REMAINS A LIVE CONTROVERSY

#### A.  The Assignments of the PPP Notes to SBA in 2021 Did Not Divest ATC of its Standing

Defendants inexplicably still maintain that ATC's assignment of the PPP Notes to SBA in 2021 stripped ATC of its standing to assert claims for Defendants' admitted fraudulent transfers and breaches of the PPP Notes.[1] In its opposition brief, however, ATC established that the 2021 assignments of the PPP Notes does not remove standing because: (1) under *Fund Liquidation Holdings LLC v. Bank of America Corp.*, 991 F.3d 370, 382 (2d Cir. 2021), *cert denied* 211 L Ed2d 475, 142 S. Ct. 757 (2022), a "presuit assignment of [the plaintiffs'] claims does not pose a constitutional roadblock" to the plaintiffs' initiation of the suit; and (2) Rule 25(c), which applies to post-commencement assignments such as ATC's assignment to SBA, allows litigation to proceed to judgment before there is a substitution of parties.[2]

Accordingly, as a matter of law, ATC continues to have standing to prosecute its claims after it assigned the PPP Notes to SBA.

#### B.  ATC's Claims are Not Moot

Defendants also argue that ATC's claims are moot.[3] This is Defendants' latest gambit as they

---

[1] Defendants Memorandum of Law In Opposition to ATC's Summary Judgment Motion, dated May 30, 2025 ("Defendants' Opp. Mem.") (Dkt. No. 144), at 2, 8.

[2] ATC's Memorandum of Law In Opposition to Defendants' Summary Judgment Motion, dated May 30, 2025 ("ATC's Opp. Mem.") (Dkt. 146)., at 10-12,

[3] Defendants' Opp. Mem., at 6-9.

try to justify their admitted fraudulent transfers and breaches of the PPP Notes and their years long campaign to harass and intimidate ATC into paying or loaning millions of dollars to Defendants. Just like Defendants' other arguments, this one too fails for multiple reasons.

### i. Defendants Failed to Meet Their Burden to Show ATC has been Afforded Complete Relief on its Claims

Defendants bear a heavy burden to demonstrate ATC has been afforded complete relief on its contract and fraudulent transfer claims. *Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC), Inc.*, 528 U.S. 167, 192 (2000) (noting that a mootness dismissal after years of litigation may "may prove more wasteful than frugal"); *Hilton v. Wright*, No. 9:05-CV-1038 (DNH), 235 F.R.D. 40, 47 (N.D.N.Y. 2006) ("Parties seeking to have claims dismissed as moot bear a heavy burden, as the test for mootness is stringent."). Defendants incorrectly use standing and mootness interchangeably throughout their argument and, in so doing, have attempted to avoid the burden they bear to demonstrate mootness. *See Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 221 (2000) (noting that the defendant bears the burden of proving mootness).

Defendants attempt to meet their burden by relying on the rule that "an interest in attorneys' fees and costs is 'insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim.'"[4]

All but one of the cases cited by Defendants, however, apply this rule to *ancillary* requests for attorneys' fees under fee shifting statutes related to underlying constitutional or statutory claims and not to damages claims, including for contract-based attorneys' fees. *See New York State Fed'n of Taxi Drivers, Inc.* 272 F.3d at 159 (constitutional claim and attorneys' fees request under 42 U.S.C. § 1988); *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 107 (1988) (standing, not

---

[4] Defendants' Opp. Mem., at 6 (quoting *New York State Fed'n of Taxi Drivers, Inc. v. Westchester Cnty. Taxi and Limousine Com'n*, 272 F.3d 154, 159 [2d Cir. 2001]).

mootness, involving private enforcement action under 42 U.S.C. § 11046(a)(1) and attorneys' fees request under 42 U.S.C. § 11046[f]); *Thole v. U.S. Bank, N.A.*, 590 U.S. 538, 541-42 (2020) (standing, not mootness, involving claim under 29 U.S.C. §§ 1001, *et sq.* and attorneys' fees request under 29 U.S.C. § 1132[f]); *Lamar Advert. of Penn, LLC v. Town of Orchard Park, New York*, 356 F.3d 365, 378 (2d Cir. 2004) (constitutional claim and attorneys' fees request under 42 U.S.C. § 1983); *Plaza Motors of Brooklyn, Inc. v. Cuomo*, No. 20-CV-4851 (WFK) (SJB), 2021 U.S. Dist. LEXIS 273917 at *12 (E.D.N.Y. Oct. 12, 2021) (constitutional claims and attorney' fees request under § 1983); *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990) (constitutional claim and attorneys' fees request under 42 U.S.C. § 1988); *Chen v. Noem*, 2025 U.S. App. LEXIS 12456, at *2, 6 (2d Cir. May 22, 2025) (claim under 28 U.S.C. § 1361 and attorneys' fees request under 28 U.S.C. § 2412(d)(1)(A)).[5] The rationale for this rule is simple—courts cannot issue "unnecessary judicial pronouncements" on constitutional and statutory issues if the underlying controversy has been terminated. *Lewis*, 494 U.S. at 481.

Defendants' argument fails because the rule does not apply where, as here, the attorneys' fees are an element of the plaintiff's damages, including for contract-based attorneys' fees.[6] *See Stokes v. Wurtsboro*, 818 F.2d 4, 6 (2d Cir. 1987) ("'Claims for damages or other monetary relief automatically avoid mootness, so long as the claim remains viable'"); *Ottley v. Sheepshead Nursing Home*, 784 F.2d. 62, 66 (2d Cir. 1986); *A.I. Trade Fin. v. Petra Int'l Banking Corp.*, 314

---

[5] Defendants' Opp. Mem., at 6-8. The other case cited by Defendants, *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100 (2d. Cir. 2008), is not remotely applicable to this case. In *W.R. Huff Asset Mgmt. Co., LLC*, the Second Circuit held that an *attorney's* interest in recovering attorneys' fees incurred by his clients cannot serve as a basis for Article III standing. 549 F.3d at 109.

[6] Under New York law, contractual attorneys' fees are recoverable as an element of damages. *Cumberland Farms, Inc. v. Lexico Enters.*, No. 10-cv-4658 (ADS)(AKT), 2012 U.S. Dist. LEXIS 19890, at *29 (E.D.N.Y. Feb. 16, 2012).

3

U.S. App. D.C. 122, 62 F.3d 1454, 1466 (1995) (finding breach of contract claim not moot where "the plaintiff sought attorney's fees not in a collateral proceeding predicated upon the defendants having forced it to sue but 'as an element of damages stemming from [the defendant's] alleged breach of the contract now in suit'"); *Wash. Hosp. Ctr. Nat'l Rehab. Hosp. v. Collier*, 292 U.S. App. D.C. 129, 947 F.2d 1498, 1502 (1991) (holding that settlement of principal element of damages does not moot claim for attorneys' fees); *Consumer Unified, LLC v. NRRM, LLC*, No. 23-CV-436-JFJ, 2024 U.S. Dist. LEXIS 180744, at *14 (N.D. Okla. Oct. 3, 2024); *Duringer v. Hartford Life Ins. Co.*, No. CV-74-M-DLC, 2014 U.S. Dist. LEXIS 207680, at *20 (D. Mont. Feb. 5, 2014) (rejecting argument that, under *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990), a contractual claim for attorneys' fees was mooted when insurer paid out on its policy).

*Consumers Unified, LLC* is directly on point. In that case, the plaintiffs asserted contract and unjust enrichment claims related to unpaid invoices for service contracts and sought unpaid principal, interest and late fees along with attorneys' fees. *Consumers Unified, LLC*, 2024 U.S. Dist. LEXIS 180744, at *5-6. While the litigation was pending, the defendants paid the full amount of principal, interest and late fees due on the invoices, but not the attorneys' fees. *Id.* at 10. As is the case here, the defendants in *Consumers Unified, LLC* thereafter argued that the plaintiff's claims should be dismissed as moot. *Id.*

The Court rejected Defendants' argument, finding that they failed "to meet their burden of showing Plaintiffs have been afforded 'complete relief' on the contract claims." *Id.* at 14. The Court correctly found that, since the attorneys' fees are an element of the plaintiffs' contract damages, there must be a determination on the merits of the contract claim. *Id.* at 15.

The same reasoning applies to this matter. When Defendants finally repaid the PPP Loans three years after the litigation was filed, they did not request or obtain an agreement that ATC and SBA

4

would dismiss their claims or waive their attorneys' fees. The claim for these unpaid attorneys' fees remains live and ATC must be allowed to prove Defendants' breach of the PPP Notes so it can recover those fees. *Wash. Hosp. Ctr. Nat'l Rehab. Hosp.*, 947 F.2d at 1502. Simply stated, ATC's claims are neither "abstract, feigned, or hypothetical" (*Lewis*, 494 U.S. at 480) and, therefore, ATC maintains "a concrete stake in the outcome" of its breach of contract claims. *Cf.*, *Thole*, 590 U.S. at 541.[7]

The same rationale applies to ATC's DCL claims. DCL § 276-a requires the Court to "fix the reasonable attorney's fees of the creditor [] incurred in such action or special proceeding under this article *as an additional amount required to satisfy the creditor's claim*." (emphasis added). Thus, the statute's express terms establish that ATC's attorneys' fees incurred in forcing Defendants to set aside their fraudulent transfers are an element of its damages and not an ancillary request. *See In re Kovler*, 253 B.R. 592, 598 (Bankr. S.D.N.Y. 2000) (noting that the award of attorneys' fees under former § 276-a "is compensatory in nature"); *see also Divane v. Krull Elec. Co.*, No. 95 C 6108, 2002 U.S. Dist. LEXIS 24333, at *2 (N.D. Ill. Dec. 16, 2002) (rejecting argument that "subsequent reconveyance of the property back to its original status rendered plaintiff's claims moot"); *DeJesus Rosario v. 251 E. 123rd St. Realty, LLC*, No. 20-cv-7387 (JSR), 2021 U.S. Dist. LEXIS 100664, at *8 (S.D.N.Y. May 27, 2021).

Additionally, as the Court in *In re Kovler* recognized, allowing Defendants to avoid making ATC and SBA whole for the two years of litigation required to set aside their admitted fraudulent

---

[7] If the Court determines on this motion that Defendants breached the PPP Notes and that ATC is entitled to its contractual attorneys' fees, it may direct ATC to submit its application, including contemporaneous records supporting the requested fees. *See, e.g., Tackney v. WB Imico Lexington Fee, LLC*, 2014 U.S. Dist. LEXIS 132510, at *21 (S.D.N.Y. Sept. 19, 2014); *Gallagher's N.Y. City Steakhouse Franchising, Inc. v. NY Steakhouse of Tampa*, 2011 U.S. Dist. LEXIS 149815, at *9 (S.D.N.Y. Dec. 29, 2011).

transfers would "[e]nable the defrauding debtor and his transferee to eviscerate the compensatory statutory object of Section 276-a." *In re Kovler*, 253 B.R. at 597.

Defendants' reliance on the non-binding summary order in *Excelsior Cap. LLC v. Allen*, 536 F. App'x 58 (2d Cir. 2013) is misplaced. In that case, the transferees returned the subject asset to the debtor's estate on the same day the creditor commenced the DCL action. *Id.* at 59-60. Thus, the creditor had already been made whole as it had not incurred attorneys' fees in the DCL action. Here, Defendants refused to release the PPP funds for nearly three years and only after ATC and SBA incurred hundreds of thousands of dollars in attorneys' fees. Allowing Defendants to avoid making ATC and SBA whole here would "eviscerate the compensatory" nature of Section 276-a.

   *ii.* ***ATC's Right to Contractual Attorneys' Fees Remains Live Because Defendants Claim ATC Breached the PPP Notes***

Even if ATC's right to attorneys' fees as an element of its primary breach of claim could be mooted, Defendants breathed life into that claim by refusing to discontinue their meritless breach of contract counterclaim. In defense to that counterclaim, ATC contends that Defendants breached the PPP Notes and relies on the same arguments in support of its primary breach of contract claim. Thus, by virtue of Defendants' counterclaim, the Court's pronouncement on whether Defendants breached the PPP Notes is necessary and a live controversy. *Cf. Lewis*, 494 U.S. at 480.

Compounding this problem, if ATC withdrew its primary claim, as Defendants insist it should, ATC would waive its right to recover attorneys' fees despite having to defend Defendants' meritless breach of contract counterclaims. In this respect, ATC's primary breach of contract claim now operates as counterclaim to Defendants' claim that ATC breached the PPP Notes. Since Defendants insisted on continuing to litigate the breach of contract claim, they cannot now claim that ATC's right to contractual attorneys' fees has been mooted. *J.P. Sedlak Assocs. v. Conn. Life & Cas. Ins. Co.*, No. 3:98 CV 145 (DFM), 2000 U.S. Dist. LEXIS 18947, at *19 (D. Conn. Mar.

31, 2000).

### iii.    Even of ATC's Request for Attorneys' Fees is Ancillary, it is Entitled to Recover those Fees Even if the Underlying Claims are Moot

Finally, even if Defendants are correct that ATC's request for attorneys' fees is ancillary, the request for fees itself is not moot, survives independently and must be heard. That is because "[a] determination of mootness *neither precludes* nor is precluded by an award of attorneys' fees." *Haley v. Pataki*, 106 F.3d 478, 483-84 (2d Cir. 1997) (emphasis added). "It is well established, to be sure, that an outstanding claim for attorneys' fees cannot revive an otherwise moot claim on the merits. But the inverse is also true; the mootness of a plaintiff's merits claim does not moot his unresolved claim for attorneys' fees." *Sos v. State Farm Mut. Auto. Ins. Co.*, No. 21-11769, 2023 U.S. App. LEXIS 22986, at *29 (11th Cir. Aug. 30, 2023).

For this reason, courts in the Second Circuit will determine attorneys' fees after a claim has been rendered moot during the course of litigation. *See Juca v. Carranza*, 2020 U.S. Dist. LEXIS 199251, at *11 (S.D.N.Y. Oct. 26, 2020*); Associated Gen. Contractors of Conn., Inc. v. City of New Haven*, 41 F.3d 62, 68 (2d Cir. 1994) (holding that "claims for attorneys' fees ancillary to the case survive independently and may be heard even though the underlying case has become moot").

In sum, even if the underlying claims have been mooted (they have not), ATC's request for attorneys' fees cannot be dismissed. At a minimum, ATC is entitled to a determination of the attorneys' fees to which it is entitled due to Defendants' breaches of the PPP Notes and admitted fraudulent transfers.

## II.    ATC IS ENTITLED TO SUMMARY JUDGMENT ON ITS BREACH OF CONTRACT CLAIM

In its moving papers, ATC demonstrated that Defendants breached the PPP Notes in several respects. In their opposition papers, Defendants did not address, much less rebut, several of these

grounds, including: (A) Defendants' defaults under loans with other creditors; (B) the Corporate Defendants' insolvency and the termination of several their businesses; and (C) material changes in Defendants' financial condition and ATC's belief that their ability to repay the loans was impaired.[8] Since Defendants do not substantively dispute that they breached the PPP Notes in these respects, ATC is entitled to summary judgment on its breach of contract claim (the third cause of action). *Ava Realty Ithaca, LLC v. Griffin*, No. 5:19-CV-123 (DNH), 652 F. Supp. 3d 255, 264 (N.D.N.Y. 2023) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.") (quoting *Taylor v. City of N.Y.*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003)).

Defendants only addressed two of the breach of contract grounds: their misrepresentation of the admitted USDA Loan delinquency and their misrepresentation that they would use the PPP funds to retain workers. Their arguments fail for several reasons.

### A. Defendants Failed to Raise an Issue of Fact Regarding their Misrepresentation of the Admitted USDA Loan Delinquency

ATC established that Defendants breached the PPP Notes based on their false or misleading statement that, at the time they submitted the PPP Applications, they were not delinquent under a loan guaranteed by a federal agency. ATC also demonstrated that, contrary to Defendants' prior contentions, the plain language of the PPP Applications does not allow Defendants to conceal the admitted delinquency if there has not been a "loss to the government." That is because the language in the PPP Applications mirrors 31 CFR 285.13(d) and SOP 50 10 5(K), both of which provide that a borrower is not eligible for a federal loan if it is delinquent on a federal loan regardless of whether the delinquency caused a loss to the government.[9]

---

[8] *Compare* ATC's Memorandum of Law in Support of ATC's Motion for Summary Judgment ("ATC's Moving Br.") (Dkt. No.125-1), at 26-29 *with* Defendants' Opp. Mem., at 23-27.

[9] ATC's Moving Br., at 22-25.

Defendants do not dispute that, under 31 CFR 285.13(d) or SOP 50 10 5(K), a borrower with delinquent debt is ineligible for SBA loans regardless if there was a loss to the government. Instead, they falsely claim that "for the first time, five years into this litigation," ATC contends that Defendants were required to disclose their admitted federal loan delinquency regardless of whether it caused a loss to the government.[10] This claim is demonstrably false—ATC made the identical argument in its December 2020 and October 2021 submissions related to its attachment motion and raised the federal loan delinquency in its Amended Complaint.[11]

Defendants also claim that ATC's witnesses agree that a loss to the government is required for both current loan delinquencies and past loan defaults.[12] There is no such testimony and, in fact, Defendants incorrectly rely on Mr. Connell's testimony regarding past loan defaults.[13]

In the end, Defendants cannot escape the plain and unambiguous language of the PPP Applications, which confirms that Defendants were required to disclose the current delinquency for the USDA Loan. Question 1 required Defendants to answer:

> [h]as the Applicant or any owner of the Applicant, or any business owned or controlled by any of them, ever obtained a direct or guaranteed loan from SBA or any other Federal agency that is currently delinquent or has defaulted in the last 7 years and caused a loss to the government.[14]

As articulated by the Supreme Court, the "last antecedent rule" provides that "a limiting clause

---

[10] Defendants' Opp. Mem., at 24.

[11] Declaration of Christopher E. Buckey in further support of ATC's Motion for Summary Judgment, dated July 2, 2025 ("Buckey Reply Dec.") (Dkt. No. 149), Ex. A (December 23, 2020 Memorandum of Law), at 6-8; Ex. B (October 15, 2021 Reply Memorandum of Law), at 3-4; Buckey Dec. Ex. A (Supplemental and Amended Complaint) ¶¶ 75-77, 82-83, 192(A).

[12] Defendants' Opp. Mem., at 25.

[13] Nolan Dec. Ex. D (Connell Tr.), at 122 (noting that you don't need a damage to the government or a seven-year period for the case of a delinquency), 128 (explaining that Nany Caple from SBA agreed with ATC's interpretation of PPP eligibility), 135 (explaining that there has been no "case law or regulation or SBA opinion or guidance" that would support the conclusion that the Defendants were eligible for PPP loans).

[14] Connell Aff. Ex. L (PPP Applications).

or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows[.]" *Barnhart v. Thomas*, 540 U.S. 20, 26, 124 S. Ct. 376, 380 (2003) (cleaned up). Under this rule, therefore, "[w]hen there is no comma, as in the statute considered in *Barnhart*, the subsequent modifier is ordinarily understood to apply only to its last antecedent." *Am. Int'l Grp. v. Bank of Am. Corp.*, 712 F.3d 775, 782 (2d Cir. 2013).

Here, Question 1 does not include a comma to set off the modifier "caused a loss to the government." That means that "caused a loss to the government" applies solely to a federal borrower that has "defaulted in the last 7 years." Thus, consistent with CFR 31 285.13(d) and SOP 50 10 5(K), Question 1 must be interpreted as requiring disclosure of the current delinquency regardless of whether there was a loss to the government. *Id.*; *New York v. Salazar*, No. 6:08-CV-644 (LEK/GJD), 2009 U.S. Dist. LEXIS 90071, at *49 (N.D.N.Y. Sept. 29, 2009) (relying on last antecedent rule).

In sum, Defendants do not dispute that the federally guaranteed USDA Loan was currently delinquent at the time they applied for the PPP Loans. This means that they were not eligible for the PPP Loans and that, in response to Question 1, they should have disclosed the USDA Loan delinquency in the PPP Applications. Since Defendants admittedly failed to disclose that delinquency, they breached the PPP Notes.[15]

## B. Defendants Breached the PPP Notes By Failing to Use the PPP Funds to Retain Workers

Defendants also represented in the PPP Applications that the PPP funds "will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments and utility

---

[15] Connell Aff. Ex. N (PPP Notes) (providing that it is an event of default if any "warranty, representation or statement furnished [] by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect").

payments."[16] In its moving papers, ATC established that this representation is false because: (A) Defendants laid off at least 271 employees right before they submitted their PPP Applications; (B) Defendants never rehired those laid off employees; and (C) did not use any PPP funds to pay those laid off employees.[17]

Defendants do not dispute that six of the entities (Jagdamba, Jagdamba III, Jagdamba V, Jagdamba VI, Poughkeepsie GC and Syracuse GC) did not "continue to employ" their respective employees beginning when the New York State shutdown was ordered (March 22, 2020) and continuing into 2021 and that NEDL did not "retain all of its employees."[18] Although Defendants claim that Patel did not testify that 271 employees were laid off, they expressly admit that at least 200 employees were laid off in March 2020.[19]

Defendants do not dispute that they did not rehire the laid off employees in 2020 and that, if any employees were ever rehired, it would have been by Syracuse GC in October 2021.[20]

Defendants also do not substantively dispute that they did not pay these laid off employees

---

[16] Connell Aff. Ex. L (PPP Applications).

[17] ATC's Statement of Material Facts, dated April 4,2025 ("SOMF") (Dkt. No. 125-2), ¶¶ 47-96; 86-93; Buckey Dec. Ex. F (Patel Tr.), at 14-39.

[18] Defendants' SOMF Response, dated May 30, 2025 (Dkt. No. 145) ¶¶ 55, 79. Defendants claim that ATC "mischaracterize[ed] the meaning of the term 'laid off.'" *Id.* ¶¶ 55, 57. Defendants, however, expressly admitted that Defendants "laid off" at least 200 employees (*Id.* ¶ 88). This is consistent with Patel's perspective, as he repeatedly testified that, in March 2020, he "laid off" the Corporate Defendants' employees. Buckey Dec. Ex. F (Patel Tr.), at 16, 19, 23, 26, 35, 37, 39. In fact, Patel testified that "laid off" was the "classification" for the Jagdamba employees. *Id.*, at 16.

[19] The 271 laid off employees is a conservative calculation based on the total number of employees claimed by Patel in the respective PPP Applications of Jagdamba, Jagdamba III, Jagdamba V, Jagdamba VI, Poughkeepsie GC and Syracuse GC (SOMF ¶¶ 49, 54, 60, 65, 68 and 72; Connell Aff. Ex. L [PPP Applications]) and Patel's testimony that he laid off all the employees for five of those entities and that he laid off all but five of Jagdamba IV's employees. SOMF ¶¶ 50, 55, 61, 63, 69, and 73; Buckey Dec. Ex. M (Patel Tr.), at 15-16, 20-23, 25-26 and 37-39. In calculating "only" 200 laid off employees, Defendants relied on the significantly lower total employee numbers estimated by Patel during his deposition, and they omitted Jagdamba VI and its 43 laid off employees.

[20] Defendants' SOMF Response ¶¶ 51, 56, 62 and 74.

from March 2020 through, at least, the end of 2020.[21] Defendants purport to dispute that they failed to use any of the PPP funds to pay the laid off employees.[22] Yet that is the only inference that can be drawn from these facts because Defendants admittedly did not pay the laid off employees through, at least, the end of 2020 and because four of the restaurants never operated again and the remaining two restaurants did not begin operating until October 2021 (Queensbury, New York) and June 2022 (Syracuse, New York).

More importantly, Defendants have not offered any evidence, including an affidavit from Niral Patel or payroll records, to suggest that any PPP funds were used to pay the laid off employees. Additionally, Defendants' expert report, which purports to identify all the permissible uses of the PPP funds, does not identify any PPP funds used for payroll for these six entities.[23]

Since the undisputed facts demonstrate that Defendants failed to use any PPP funds to retain at least 200 employees (likely more than 271), Defendants resort to again claiming that ATC has raised a new argument.[24] This too is demonstrably false—ATC has alleged from the outset that Defendants' representation that they would use the PPP funds to retain workers is false or misleading, which constitutes a breach of the PPP Notes.[25]

Defendants also claim that they "had every intention of reopening their business,"[26] that they

---

[21] *See, e.g.*, *id.* ¶¶ 80, 88. In Defendants' SOMF Response ¶ 88, for example, Defendants purport to dispute that "Niral Patel and the Corporate Defendants did not pay at least 271 employees after March 22, 2020." In that response, however, Defendants did not address whether they paid those employees. Rather, Defendants only took issue with the precise date in March 2020 when Patel laid off the employees and the total amount of employees that he laid off.

[22] Defendants do not actually dispute that they did not use PPP funds to pay the laid off employees; rather, they only claim that "Mr. Patel did not testify that Defendants did not use any of the PPP funds to retain" employees. *Id.* ¶¶ 58, 63 and 70.

[23] *See generally* FAZ Report.

[24] Defendants' Opp. Mem., at 9-12.

[25] Buckey Dec. Ex. A (Supplemental and Amended Complaint) ¶¶ 84, 192.

[26] Defendants' Opp. Mem., at 26.

never intended the layoffs to be permanent[27] and that Defendants were unable to use the PPP funds to rehire the 200+ employees because of the administrative hold placed on Nirmala Patel's personal account on September 24, 2020.[28] These claims are both irrelevant and disingenuous because Defendants do not dispute that, prior to placement of the administrative hold on September 24, 2020, they had not used any of the PPP funds to pay the 200+ laid off employees. Nor do Defendants dispute that they could have kept their restaurants open (and continued employing these workers) beginning in March 2020 with take-out/to go offerings and in June 2020 with outdoor dining. Defendants did not claim that they either option was impossible, nor did they offer any evidence, including a sworn affidavit from Niral Patel, explaining why, at a time they were flush with PPP and EIDL loan cash, they did not take advantage of the take-out/to go and outdoor dining opportunities.[29] Nor did Defendants explain why they were not obligated to pay the laid off employees simply because the restaurants were closed—the PPP loan program was intended to fund payments to employees while businesses were shut down.

Defendants' argument that, under SBA rules, they properly used the 200+ laid off employees in calculating the total number of employees in the PPP Applications similarly misses the point.[30] By including those laid off employees in the applications, Defendants were able to increase the amount of PPP Loans to each of the Corporate Defendants. Despite receiving a direct financial benefit from those laid off employees, Defendants did not share any of that benefit with those employees. Yet, at the same time, Patel used PPP funds to pay his family ($2,915.92 to Nirmala

---

[27] Defendants' SOMF Response ¶¶ 50, 61
[28] *Id.* ¶¶ 56-58, 67, 70, 75 and 79.
[29] ATC respectfully submits that, even if Defendants could not have provided take out/to go offerings or outdoor dining, both the letter and spirit of the PPP program mandated that they use the PPP funds to pay the 200+ laid off employees.
[30] *Id.* ¶¶ 65, 68, 72, 78 and 86.

13

Patel and $13,943.99 to Lindsey Meilleur Patel) and himself (approximately $72,857.68)[31] and he deposited more than $250,000 into his personal TD Ameritrade brokerage account to fund his purchase on margin more than $555,000 in stocks and options.[32]

## III.    DEFENDANTS FAILED TO DEMONSTRATE FACTUAL ISSUES REGARDING ATC'S DCL CLAIMS

In its Moving Brief, ATC established that it is entitled to summary judgment on its actual intent claim under DCL § 273(a)(1) based on Patel's admission that he transferred the PPP funds to avoid paying Defendants' creditors *and* based upon the undisputed evidence establishing the "badges of fraud" factors, particularly the presumption of insolvency that must be applied to Defendants.[33] ATC also demonstrated there are no factual issues for its constructive intent claim under DCL §§ 273(a)(2) and 274 based on the evidence that the transfers are presumptively fraudulent because the transfers were made for no consideration to an insider (Nirmala Patel). *See United States v. Alfano*, 34 F. Supp. 2d 827, 845 (E.D.N.Y. 1999); *Cheek v. Brooks*, 188 A.D.3d 785, 786 (N.Y. App. Div. 2d Dep't 2020).[34]

In their opposition papers, Defendants do not dispute that the funds were transferred to Nirmala Patel for no consideration or that Niral Patel did so to avoid payment to Defendants' creditors. Defendants also did not address, let alone rebut, the presumption of fraud. For this reason alone, ATC is entitled to summary judgment on its actual intent (DCL § 273[a][1]) and constructive intent (DCL §§ 273[a][2] and 274) claims.

Moreover, each of Defendants' actual arguments is meritless. For example, Defendants imply that ATC lacks standing to assert the DCL § 273(a)(1) claim because Defendants were attempting

---

[31] *Id.* ¶¶ 114-122.
[32] *Id.* ¶ 129.
[33] ATC's Moving Brief, at 15-18.
[34] *Id.*, at 17-20.

to defraud creditors other than ATC.[35] This argument fails because the statute expressly applies to transfers made "with actual intent to hinder, delay or defraud *any creditor* of the debtor." (emphasis added); *see Anhui Aido Garment Co. v. Stern*, No. 24-cv-1572 (JGK), 2025 U.S. Dist. LEXIS 111398, at *19 (S.D.N.Y. June 12, 2025).

Defendants' claims that they "acted with the intention of *protecting* the PPP funds"[36] and that the PPP rules and regulations do not restrict where the funds may be placed[37] are not cognizable defenses to a fraudulent transfer claim. *In re Transcare Corp.*, Nos. 20-cv-06274 (LAK); 20-cv-06523 (LAK), 2021 WL 4459733, at *18 (S.D.N.Y. Sept. 29, 2021); *Campos v. V&B Inv. Guttenberg LLC*, No. 23-CV-1184 (DLC), 2024 U.S. Dist. LEXIS 48202, at *11 (S.D.N.Y. Mar. 19, 2024). Since Patel admits that he transferred the funds to Nirmala Patel for no consideration and to avoid creditors, all the elements of the actual intent claim under DCL § 273(a)(1) are established and ATC is entitled to judgment on that claim as a matter of law.

Alternatively, ATC demonstrated it is entitled to judgment on the DCL § 273(a)(1) claim based on the badges of fraud (DCL § 273[b]). Defendants' limited challenge to three of those badges fails.

*First*, regardless of "the relationship between Niral Patel, Nirmala Patel, and the Corporate Defendants,"[38] Nirmala Patel is an "insider" under DCL § 270(h)(1)(i) as she is "a relative of the debtor," and under DCL § 270(h)(2)(vi) as she is a "relative of a...officer or person in control of the debtor," namely, Niral Patel.

*Second*, there is no dispute that Defendants failed to disclose to their creditors or ATC that they

---

[35] Defendants' Opp. Mem., at 17 (attempting to distinguish *Campos v. V&B Inv. Guttenberg LLC*, No. 23-CV-1184 [DLC], 2024 U.S. Dist. LEXIS 428202 [S.D.N.Y. Mar. 19, 2024]).
[36] *Id.*, at 17 (emphasis in original).
[37] *Id.*, at 22-23.
[38] *Id.*, at 18-19.

transferred the funds to Nirmala Patel. DCL § 273(b)(3). Regardless of whether the transfer was noted in the large transaction alerts, Defendants did not seek guidance from ATC regarding the transfer and concealed that they had done so for no consideration and to avoid creditors. *Steinberg v. Levine*, 6 A.D.3d 620, 621 (N.Y. App. Div. 2d Dep't 2004); *Cambridge Valley Machining, Inc. v. Hudson MFG LLC*, 470 F. Supp. 3d 230, 262-63 (N.D.N.Y. 2020) (same).

*Third*, while Defendants argue about the showing necessary to demonstrate insolvency,[39] they failed to address or rebut the presumption of insolvency. *First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*, 871 F. Supp. 2d 103, 120 (E.D.N.Y. 2012).

The presumption also is established under DCL § 271(b), which states "[a] debtor that is generally not paying the debtor's debts as they become due other than as a result of bona fide dispute is presumed to be insolvent." Here, at the time of the transfer, Defendants indisputably were not paying their debts as they became due as they owed more than $17 million for uncured defaults, pending litigations and forty open tax liens and warrants.[40] That is compelling evidence that Defendant were not paying their debts as they became due. Thus, the burden shifted to Defendants to prove "that the nonexistence of insolvency is more probable than its existence." DCL § 271(b). Defendants did not present *any* evidence demonstrating their solvency nor did they dispute that they had more than $17 million in unpaid obligations.

The Court should reject out of hand Defendants' illogical claim that there was not a "transfer" under the DCL.[41] Specifically, Defendants claim that the transfer into Nirmala Patel's personal account was not a "disposing of or parting with" the funds because Patel "maintained power of attorney over" the personal account and because Nirmala is a shareholder in some of the entities.

---

[39] *Id.*, at 20.
[40] SOMF ¶ 107.
[41] Defendants' Opp. Mem., at 21.

This argument fails because Patel's claimed control over the funds is evidence that he was attempting to hinder, delay or defraud creditors. DCL § 273(b)(2). Additionally, Patel clearly believed he was transferring title to the funds as he testified that he believed that transferring the funds to Nirmala's account would protect them from the Corporate Defendants' creditors[42] and because the Power of Attorney does not grant any ownership rights to Patel. *Cortlandt St. Recovery Corp. v. Hellas Telecomms.*, 790 F.3d 411, 418 (2d Cir. 2015).

Defendants also argue that ATC cannot assert DCL claims because, "at the time the transfers were made, Defendants had enough funds to account for the payment."[43] Defendants did not offer any evidence, including a sworn affidavit or documents, to support that claim. The claim also is demonstrably false since Defendants admittedly owed more than $17 million in unpaid obligations at the time of the transfers.[44]

Finally, Defendants again argue that the fraudulent transfer claims are moot because they repaid the loans after three years of litigation.[45] As discussed above, this argument fails because, under DCL § 276-a, ATC's attorneys' fees incurred in forcing Defendants to set aside their fraudulent transfers are an element of its damages. *See In re Kovler*, 253 B.R. at 598; *DeJesus Rosario v. 251 E. 123rd St. Realty, LLC*, 2021 U.S. Dist. LEXIS 100664, at *8.

## IV.    DEFENDANTS' COUNTERCLAIMS MUST BE DISMISSED

### A. The Counterclaims Based on the Administrative Hold Placed on Nirmala Patel's Personal Account Must be Dismissed for Lack of Standing

In its moving papers, ATC demonstrated that Defendants' counterclaims must be dismissed for lack of standing based on documentary evidence. In their Second Amended Rule 26

---

[42] Buckey Dec. Ex. F (Patel Tr.), at 105-106.
[43] Defendants' Opp. Mem., at 15.
[44] SOMF ¶ 107; Buckey Dec. Ex. F (Patel Tr.), at 83, 87.
[45] Defendants' Opp. Mem., at 14, 16.

Disclosures, Defendants expressly limited the purported damages purportedly caused by the administrative hold placed on Nirmala Patel's personal account to lost interest allegedly suffered by the Corporate Defendants. They lack standing to assert those damages because, once the funds were transferred to Nirmala's account, there is a presumption that Nirmala alone has title to and control over those funds.[46]

In their opposition, Defendants failed to offer any evidence rebutting the presumption that Nirmala owns the funds in her personal account. Defendants did not dispute that, as a matter of law, the Power of Attorney did not give Patel or the Corporate Defendants control over the funds in Nirmala's personal account or standing to assert a claim on her behalf. *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 18 (2d Cir. 1997). Nor did Defendants dispute that, by transferring the funds to Nirmala, the Corporate Defendants voluntarily relinquished any interest in the funds.[47]

Instead, Defendants argue that Nirmala Patel "has established a basis in fact to support their right to assert counterclaims against ATC for its conduct as it relates to her bank account held at ATC."[48] Defendants, however, do not identify any details for this purported basis nor do they offer any legal authority for the claim that the Corporate Defendants have standing to assert counterclaims based on the alleged "legacy of the relationship between ATC and the Patel family for nearly four decades."[49]

---

[46] SOMF ¶¶ 150-151; Buckey Dec. Ex. E (Second Amended Rule 26 Disclosures) Appendix A(iii); ATC's Moving Br., at 30-34.

[47] Defendants claim that they "made clear in their Second Amended Rule 26 Disclosures that the damages sought were on behalf of all Defendants." Defendants' Opp. Mem., at 28. That is not true—in Appendix A(iii) they specifically identified each Corporate Defendant and amount of interest claimed by each entity. Defendants stated that their damages would be "fully articulated in Defendants' expert report on damages," but never disclosed any damages report.

[48] Defendants' Opp. Mem. at 29.

[49] *Id.*

Similarly, to the extent Defendants claim that, because Nirmala Patel is a shareholder in few Corporate Defendants, she has standing to assert claims for those entities, they are wrong as a matter of law. *Baltus-Michaelson v. Credit Suisse First Bos., LLC*, 116 F. App'x 308, 309 (2d Cir. 2004) (holding that shareholders lack standing to assert individual claims based on injury to the corporation).

As a matter of law, Nirmala Patel had title to and controlled the funds transferred to her account and the Power of Attorney did not grant Patel and the Corporate Defendants title or control to the funds nor did it confer standing to assert claims on her behalf. The Corporate Defendants, therefore, lack standing to pursue the counterclaims based upon the administrative hold.

### B. The Breach of Contract Counterclaim Fails as a Matter of Law

In their opposition papers, Defendants still do not identify a specific provision within the PPP Notes that ATC allegedly breached and instead claim that ATC has "breached the language and the spirit of CARES act."[50] As discussed in ATC's opposition to Defendants' motion for summary judgment, the PPP Notes comply with the CARES Act and, in any event, there is no private right of action for the alleged inconsistencies.[51]

The breach of contract counterclaim also must be dismissed based on Defendants' breaches of the PPP Notes, including three grounds (Defendants' defaults under loans with other creditors, Defendants' insolvency and business termination and the material change in Defendants' financial condition) that Defendants failed to address in their moving papers or in their papers opposing ATC's summary judgment motion.[52] Additionally, ATC demonstrated that it properly placed the administrative hold on Nirmala Patel's personal account in accordance with the terms and

---

[50] *Id.*, at 30.
[51] ATC's Opp. Mem., at 24-25.
[52] *Compare* ATC's Moving Br., at 26-29 with Defendants' Opp. Mem., at 23-27.

conditions governing her account, which were sent to Niral Patel in accordance with his request.[53]

Finally, Defendants did not address or rebut ATC's showing that it properly denied loan forgiveness for Maha Laxmi and NEDL.[54] Thus, the portion of Defendants' breach of contract claim that is premised on the loan forgiveness denials must be dismissed as well.

### C.  The Unjust Enrichment and Conversion Counterclaims Must be Dismissed

Defendants likewise did nothing to resuscitate their unjust enrichment and conversion counterclaims. The unjust enrichment claim is barred by a contract that governs the parties' relationship (either the PPP Notes or the Account Terms and Conditions). Additionally, Defendants do not dispute that, as a matter of law, they cannot demonstrate that ATC received a "benefit" from the funds held in Nirmala Patel's account. *Pincover v. J.P. Morgan Chase Bank, N.A.*, 592 F. Supp. 3d 212, 229 (S.D.N.Y. 2022).[55]

Similarly, the conversion counterclaim fails as a matter of law because a contract governs the parties' relationship.[56] Even if that counterclaim was not barred by either the PPP Notes or the Account Terms and Conditions, Defendants again failed to address or dispute that a conversion claim may not be asserted against a bank for funds deposited in a bank account and because the Corporate Defendants relinquished their possessory interest when they transferred the fund to Nirmala Patel.[57] For those reasons as well, the conversion counterclaim must be dismissed.

---

[53] ATC's Moving Br., at 35-36; ATC's Opp. Mem., at 26-27; Connell Opp. Aff. Ex. A (April 15, 2019 Niral Patel email), Ex. C September 2, 2020 Online Application); Natalie Wait Opp. Aff. ¶¶ 23-25, Ex. B (May 22, 2020 email and portion of mailing list), Ex. C (June 23, 2020 email and batch sheet log page).
[54] ATC's Moving Br., at 36-37; *see also* ATC's Opp. Mem., at 27.
[55] *Compare.* ATC's Moving Br., at 37-38 *with* Defendants' Opp. Mem., at 31.
[56] ATC's Moving Br., at 39.
[57] *Compare* ATC's Moving Br., at 40 *with* Defendants' Opp. Mem., at 31-32.

Dated: Albany, New York
      July 2, 2025

                            CULLEN AND DYKMAN LLP

                            */s/ Christopher E. Buckey*
                            Christopher E. Buckey, Esq. (BR #510106)
                            Kristen A. Davis, Esq. (BR #705147)
                            80 State Street, Suite 900
                            Albany, NY 12207
                            T: (518) 788-9440
                            F: (518) 689-9519
                            cbuckey@cullenllp.com
                            kdavis@cullenllp.com

                            *Counsel for Adirondack Trust Company*