UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ADIRONDACK TRUST COMPANY,

        Plaintiff,

        v.                     1:21-CV-1334 (DNH/ML)

MAHA LAXMI CORP., *et al.*,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

NORTHEAST DINING &
LODGING, INC., *et al.*,

        Counter-Claimants,

        v.

ADIRONDACK TRUST COMPANY,

        Counter-Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:            OF COUNSEL:

CULLEN & DYKMAN LLP      CHRISTOPHER BUCKEY, ESQ.
Attorneys for Plaintiff
80 State Street, Suite 900
Albany, NY 12207

WHITEMAN OSTERMAN &                    ANNA V. SEITELMAN, ESQ.
    HANNA LLP
Attorneys for Defendants
One Commerce Plaza
99 Washington Avenue, Suite 1900
Albany, NY 12210

DAVID N. HURD
United States District Judge


## DECISION and ORDER

## I.   INTRODUCTION

On October 12, 2020, plaintiff Adirondack Trust Company ("plaintiff"), a community bank, filed this civil action in Supreme Court, Saratoga County, alleging that shareholder-defendants[1] Niral A. Patel and Nirmala A. Patel, the owners and operators of a collection of restaurants and a hotel located in New York and New Jersey, fraudulently obtained and improperly diverted nearly $2 million in Paycheck Protection Program funds that the bank had loaned to defendants' businesses under the auspices of the Coronavirus Aid, Relief, and Economic Security Act.

---

[1] The two individual defendants are shareholders in ten defendant-corporations: Maha Laxmi Corp., Maha Laxmi II Corp., Jagdamba Inc., Jagdamba II Corp., Jagdamba III Corp., Jagdamba V Corp., Jagdamba VI Corp., Northeast Dining & Lodging, Inc. ("Northeast"), Poughkeepsie GC, Inc. ("PGC"), and Syracuse GC, Inc. ("SGC"). *See* Dkt. No. 7. Notably, Maha Laxmi II Corp. and Jagdamba II Corp. have since declared bankruptcy. Dkt. Nos. 12, 13. References to the "corporate defendants" are to these entities, subject to the proviso that neither party can pursue further action in this forum vis-à-vis the two bankrupt corporate entities.

On December 10, 2021, defendants removed[2] the civil action to this forum, Dkt. No. 1, and, after plaintiff filed an amended verified complaint asserting claims for, *inter alia*, breach of contract and fraudulent transfer under New York's Debtor and Creditor Law, Dkt. No. 7, defendants answered and asserted counterclaims for breach of contract, unjust enrichment, and conversion, Dkt. No. 8. Thereafter, the parties conducted a period of discovery, *see* Dkt. No. 118, and cross-moved for summary judgment, Dkt. Nos. 125, 128.[3]

The cross-motions have been fully briefed and will be considered on the basis of the submissions without oral argument.

## II.    BACKGROUND

The COVID-19 pandemic forced federal, state, and local governments to make one difficult policy choice after another. Many of those decisions came with severe economic consequences. And those financial harms seemed to fall disproportionately on smaller business owners and their front-line employees, especially those in the service industries.

In March of 2020, in an attempt to defray some of the economic pain from these policy choices, Congress enacted the Coronavirus Aid, Relief, and

---

[2] Defendants removed the action on the basis of federal-question jurisdiction after plaintiff added Lanham Act claims to the pleading. Defendants' motion (and plaintiff's opposition to that motion) touches on these claims, but the parties' primary dispute involves the fate of the $2 million in loaned funds. The Lanham Act claims (and related state-law claims) are discussed briefly *infra*.

[3] Defendants also moved to preclude plaintiff's expert. Dkt. No. 128. That motion is denied for the reasons explained by plaintiff in its opposition to this motion. Dkt. No. 146 at 46–47.

Economic Security ("CARES") Act.  Pub. L. No. 116-136, 134 Stat. 281, 286 (2020).  As relevant here, the CARES Act established the Paycheck Protection Program ("PPP"), which was "a temporary program targeted at providing small business with the funds necessary to meet their payroll and operating expenses and therefore keep workers employed."  *Springfield Hosp., Inc. v. Guzman*, 28 F.4th 403, 409 (2d Cir. 2022) (citation omitted).

"The PPP provides potentially forgivable loans to eligible small businesses, allowing the recipient to seek loan forgiveness if at least 60% of the loaned funds are used for specified expenses, such as payroll."  *Springfield Hosp., Inc.*, 28 F.4th at 409 (citation omitted).  "However, unauthorized uses of PPP funds, as well as certain authorized uses, are ineligible for loan forgiveness."  *Id.* (citation omitted).

The PPP was not a standalone program.  Instead, Congress placed the PPP under the aegis of the United States Small Business Administration ("SBA"), a federal agency that aids small businesses by, *inter alia*, financing loans provided that certain underwriting and eligibility criteria are met.  *See Springfield Hosp., Inc.*, 28 F.4th at 408–09.  "Although the SBA guarantees these loans, they are typically issued by private lenders rather than through direct disbursals from the SBA."  *Id.* at 409 (citations omitted).

Plaintiff Adirondack Trust Company ("plaintiff") is a banking institution that issued PPP loans during the COVID-19 pandemic.  *See* Pl.'s Facts, Dkt.

4

No. 125-2 ¶ 27.  Defendants owned and operated buffet-style restaurants, hotels and management and service companies and had a pre-existing business and banking relationship with plaintiff.  Defs.' Facts, Dkt. No. 128-1 ¶ 1.  Defendant Niral Patel took over the family's businesses in 2019, when his father died unexpectedly.  *Id.* ¶¶ 2–3.

In early April of 2020, each of the corporate defendants applied for PPP loans from plaintiff.  *See* Pl.'s Facts ¶ 27; Defs.' Facts ¶ 15.  Defendant Niral Patel signed each of these PPP loan applications as the authorized representative for each prospective borrower.  Pl.'s Facts ¶ 28.  In doing so, defendant Niral Patel certified that he had read and understood the various legal statements and disclosures included in the PPP loan applications.  *See id.* ¶ 29.

Notably, in these PPP loan applications, defendant Niral Patel certified that neither he nor anyone else associated with the applicant had obtained a direct or guaranteed loan from the SBA or any other federal agency that was currently delinquent or had defaulted in the last seven years and caused a loss to the government.[4]  Pl.'s Facts ¶ 31.  Defendant Niral Patel also certified that each corporate-applicant was eligible to receive a PPP loan under the rules in effect at the time each application was submitted.  *See id.* ¶¶ 29–30, 32.

---

[4] Defendant Niral Patel testified that, at the time of these applications, he was aware that a USDA loan to Jagdamba was delinquent.  Defs.' Facts ¶ 97.

On April 14 and April 16, 2020, plaintiff approved the PPP loan applications and issued ten checks to the ten corporate defendants in a total amount of $1,979,600.00.  Pl.'s Facts ¶ 98; *see also* Defs.' Facts ¶¶ 20, 23.  Defendant Niral Patel initially deposited each of these checks into the respective corporate defendants' individual checking accounts:

| Corporate Defendant | Amount | To Account |
|---|---|---|
| Jagdamba | $185,700.00 | ending in '523 |
| Jagdamba II | $172,900.00 | ending in '701 |
| Jagdamba III | $203,000.00 | ending in '714 |
| Jagdamba V | $181,900.00 | ending in '549 |
| Jagdamba VI | $209,400.00 | ending in '565 |
| Maha Laxmi | $25,100.00 | ending in '536 |
| Maha Laxmi II | $110,300.00 | ending in '727 |
| Northeast | $276,400.00 | ending in '484 |
| PGC | $256,200.00 | ending in '507 |
| SGC | $357,900.00 | ending in '497 |

Pl.'s Facts ¶ 99; *see also* Defs.' Facts ¶ 24.

However, about a month later, defendant Niral Patel transferred funds from each of these corporate checking accounts (except for the Maha Laxmi

6

account ending in '536) to co-defendant Nirmala Patel's personal checking account (ending in '819) in closely corresponding amounts:

| Corporate Defendant | Amount | From Account |
|---|---|---|
| Jagdamba | $185,000.00 | ending in '523 |
| Jagdamba II | $172,000.00 | ending in '701 |
| Jagdamba III | $203,000.00 | ending in '714 |
| Jagdamba V | $171,000.00 | ending in '549 |
| Jagdamba VI | $225,000.00 | ending in '565 |
| Maha Laxmi II | $110,000.00 | ending in '727 |
| Northeast | $257,000.00 | ending in '484 |
| PGC | $251,000.00 | ending in '507 |
| SGC | $350,000.00 | ending in '497 |

Pl.'s Facts ¶ 100.[5]

In total, defendant Niral Patel transferred $1,924,000.00 from the corporate defendants' accounts to the personal checking account of co-defendant Nirmala Patel (his mother). Pl.'s Facts ¶ 102. The corporate defendants received no consideration in exchange for these transfers. *Id.* ¶ 105. Instead,

---

[5] Defendants "dispute" that "PPP funds" were transferred because cash is fungible. Dkt. No. 145 ¶ 101. This may be true but does not actually place in dispute whether these particular transfers occurred. That conclusion holds true whether or not there is any "specific legal requirement that PPP funds" be segregated or otherwise tracked by the borrower. *See, e.g.*, Defs.' Facts ¶¶ 25–33.

7

defendant Niral Patel testified that he had transferred these funds to protect them from the corporate defendants' creditors.  *Id*. ¶ 106; Defs.' Facts ¶ 34.

In September of 2020, plaintiff's representatives learned that these transfers of money to co-defendant Nirmala Patel's personal checking account had occurred.  Connell Decl., Dkt. No. 127 ¶ 39; *see also* Defs.' Facts ¶¶ 37–40. Plaintiff eventually placed an administrative hold on co-defendant Nirmala Patel's personal checking account for the full amount of the PPP loans that had been disbursed: $1,979,600.  Connell Decl. ¶ 41; Defs.' Facts ¶¶ 41, 50–52.

In October of 2020, plaintiff commenced this action alleging that defendants had failed to use the PPP loan proceeds for permissible expenses (such as for covering its employees' paychecks) and that defendants had instead fraudulently transferred the proceeds to co-defendant Nirmala Patel's personal account without consideration to avoid creditors.[6]  Pl.'s Facts ¶ 144.

In the fall of 2021, some of the corporate defendants submitted applications for loan forgiveness.  Pl.'s Facts ¶ 152.  Plaintiff denied these loan forgiveness applications.  Defs.' Facts ¶¶ 87, 91–94.  Thereafter, plaintiff assigned the PPP loans to the SBA, which paid plaintiff for the outstanding principal

---

[6]  Here and elsewhere, defendants "dispute" this allegation (and other allegations) as being "based on self-serving and conclusory allegations in an affidavit that consists of inadmissible evidence."  *See, e.g.*, Dkt. No. 145 ¶ 147.  But there is nothing necessarily objectionable about a self-serving declaration as long as the affiant is making representations as to matters within their personal knowledge.  And evidence need not be presented in admissible form for purposes of summary judgment—it need only exist in a form that *could* be admissible at trial.  *See* Fed. R. Civ. P. 56(c)(2).  To the extent that the Court has relied on this or any other "disputed" paragraph for summary judgment purposes, defendants should understand that their objection has been considered and overruled.

and interest.  Connell Decl. ¶ 53.  However, the SBA directed plaintiff to continue to service these PPP loans to defendants.  *Id.* ¶ 54.

In August of 2023, defendants repaid $1,745,184.87 for the principal and interest due on the PPP loans (not accounting for the loans made to the two corporate defendants that had declared bankruptcy).  Pl.'s Facts ¶ 158; Defs.' Facts ¶¶ 64, 114–16, 118–19.  However, defendants have not paid the attorney's fees that plaintiff has incurred in connection with this litigation.  Pl.'s Facts ¶¶ 161–66.

## III.  LEGAL STANDARD

The entry of summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over a material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

The Court must view the facts and draw all reasonable inferences in the light most favorable to the non-movant.  *Id.* at 255.  Even so, there is no genuine issue for trial "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986) (cleaned up).

Where, as here, the parties have cross-moved for summary judgment, a reviewing court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences *against* the party whose motion is under consideration." *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993) (cleaned up). In doing this analysis, it bears noting that "a district court is not required to grant judgment as a matter of law for one side or the other." *Id.*

## IV.  DISCUSSION

The parties agree that defendants repaid all of the PPP loans to the SBA in 2023. *See, e.g.*, Dkt. No. 144 at 7 ("It is undisputed that in 2023, Defendants paid off every [PPP] loan at issue[.]"). That leads to an obvious question: why is this federal-court litigation still going on three years later?

In plaintiff's view, the answer is simple: defendants' years-long refusal to repay the PPP loans (and continued refusal to drop their specious counterclaims) has caused plaintiff to rack up a substantial bill for attorney's fees, which defendants have refused to reimburse.

Defendants, however, claim that they are the real victims here. According to defendants, plaintiff wrongfully froze the proceeds of the PPP loans based on their misunderstanding of how the federal program worked, which deprived defendants of the capital they needed to keep their businesses afloat during the pandemic.

**A. Plaintiff's Motion** (Dkt. Nos. 125, 126, 127, 143, 144, 145, 150)

First, plaintiff argues that it is entitled to summary judgment on its claims for fraudulent transfer under New York's Debtor & Creditor Law ("DCL") §§ 273 and 274 (Counts One and Two), which entitles it to an award of reasonable attorney's fees. Dkt. No. 125 at 24–31. Second, plaintiff argues that it is entitled to summary judgment on its breach-of-contract claim arising from the PPP Notes (Count Three), entitling it to an award of reasonable attorney's fees. *Id.* at 31–39. Third, plaintiff argues that the corporate defendants lack standing to assert counterclaims that are related to the administrative hold placed on co-defendant Nirmala Patel's personal account. *Id.* at 39–42. Fourth, plaintiff argues that defendants' counterclaims for breach of contract, unjust enrichment, and conversion fail as a matter of law. *Id.* at 43–49.

In opposition, defendants argue that plaintiff lacks standing to pursue any of these claims because all that is left to decide are attorney's fees and costs.[7] Dkt. No. 144 at 12–15, 29–30. On the merits, defendants contend that plaintiff's DCL fraudulent-transfer claims (in Counts One and Two) must be dismissed because: (1) "the full value of the PPP funds remained in [plaintiff's]

---

[7] Defendants also argue that plaintiff has "retroactively" amended its pleadings without leave of court by, *inter alia*, "changing its legal theories" after years of discovery. Dkt. No. 144 at 15–19. This argument is rejected. Plaintiff's operative pleading makes clear that it is seeking relief related to the propriety of defendants' transfer of the PPP funds, including whether that conduct violated the terms of the Notes themselves and/or state statutory law.

11

bank accounts"; (2) defendants' repayment mooted plaintiff's claims; (3) plaintiff failed to show intent to defraud; (4) plaintiff failed to establish a "transfer" occurred within the meaning of the DCL; and/or (5) the PPP does not require the funds to be held in any particular account. *Id.* at 19–29.

Likewise, defendants contend that plaintiff's breach-of-contract claim (in Count Three) must be dismissed because: (1) defendants did not "cause a loss to the government"; (2) defendants had "every intention" of reopening their businesses but for COVID-19 and plaintiff's "reckless conduct"; and/or (3) plaintiff cannot establish damages. Dkt. No. 144 at 29–34.

With respect to their counterclaims, defendants argue that they have standing to bring them because "their Second Amended Rule 26 Disclosures" make it clear that the damages sought were on behalf of all defendants (not just the corporate entities). Dkt. No. 144 at 34. According to defendants, the evidence shows that *plaintiff* breached the PPP notes and was unjustly enriched by its "malicious" retention of defendants' loan money, which plaintiff wrongfully converted. *Id.* at 35–39.

"The DCL, as amended in 2020 by the Uniform Voidable Transactions Act, permits creditors to void actual and constructive fraudulent transfers." *Drip Cap., Inc. v. JY Imports of N.Y., Inc.*, 348 F.R.D. 536, 547 (E.D.N.Y. 2025) (citing DCL §§ 273a)(1)–(2), 274(a)–(b)); *see also Espire Ads LLC, TAPP Influencers Corp.*, 655 F. Supp. 3d 223, 268 (S.D.N.Y. 2023) ("After April 4, 2020,

12

what were once § 276 and § 273, capturing actual and constructive fraudulent conveyance, have now become § 273(a)(1) and § 273(a)(2), respectively.").

Upon review of the parties' briefing, and after considering the relevant legal standards, plaintiff's motion for partial summary judgment will be granted. The parties spill a lot of ink fighting about how, exactly, defendants used or intended to use the PPP money, whether or not defendants actually "laid off" their employees (as opposed to merely "not scheduling them for a while" during an allegedly planned shutdown period), and whether or not defendants' behavior violated the "spirit" of the PPP loan program.

These factual disputes—to the extent they can even be considered "disputes" within the meaning of the summary judgment standard—are almost all totally irrelevant to the governing legal analysis. First, the Court agrees with plaintiff that its post-suit assignment of the PPP Notes to the SBA did not divest it of Article III standing to pursue its DCL and breach-of-contract claims.[8] *See Fund Liquidation Holdings, LLC v. Bank of Am. Corp.*, 991 F.3d 370, 380 (2d Cir. 2021).

Second, the Court agrees with plaintiff that defendants have failed to carry their burden of establishing that the DCL and breach-of-contract claims

---

[8] In opposition, defendants contend that this argument is "set forth more fully" in their own motion for summary judgment. Dkt. No. 144 at 19. But under our Local Rules, "a party may not articulate a legal argument simply by 'incorporating by reference' the argument presented in any other document." *Nissan Motor Acceptance Corp. v. Dealmaker Nissan, LLC*, 2012 WL 2522651, at *2 n.2 (N.D.N.Y. June 27, 2012) (explaining rationale for this prudential limitation).

are moot.  *See* Dkt. No. 150 at 8–12.  As plaintiff points out, the only really helpful case for defendants is the non-precedential opinion in *Excelsior Cap., LLC v. Allen*, 536 F. App'x 58, 61–62 (2d Cir. 2013) (summary order).  But *Excelsior Capital* is readily distinguishable from this fact pattern.

There, the panel rejected the notion that state-law DCL claims could be prosecuted for the *sole purpose* of chasing attorney's fees.  *See* 536 F. App'x at 61.  Unlike the creditor-plaintiff in *Excelsior Capital*, plaintiff pursued its DCL and breach-of-contract claims based on the PPP funds for several *years* before defendants finally repaid the principal and interest.

Further, plaintiff's appear to be correct that, unlike other contexts in which attorney's fees are considered ancillary to the litigation, the attorney's fees and costs being sought are part of plaintiff's damages on these claims.  *See* Dkt. No. 150 at 8–12.  But regardless of whether or not that is an accurate statement of the law, the Court concludes that plaintiff is entitled to pursue attorney's fees notwithstanding the fact that defendants have repaid the loans.

To conclude otherwise would create a perverse incentive: a debtor sued by a creditor could drag its feet in litigation (to what end, who can say).  But once the debtor realized that the litigation had almost run its course, the debtor could just pay off the principal and interest shortly before an adverse judgment to moot out the lender's attorney's fees.  That cannot be the law.

On the merits of plaintiff's DCL claims (Counts One and Two), plaintiff is correct that defendants' admissions establish that the transfers from the corporate defendants' accounts to co-defendant Nirmala Patel's personal account are voidable because they were transferred to an "insider"—*i.e.*, a relative of the debtor—for no consideration and for the stated purpose of avoiding the corporate defendants' creditors. Dkt. No. 125-1 at 24–30; *see also* Dkt. No. 150 at 20–23; Dkt. No. 126-13 ¶ 13.

Under state law, these kinds of transfers under these kinds of circumstances give rise to a rebuttable presumption of fraud. *See, e.g.*, *Cheek v. Brooks*, 188 A.D.3d 785, 787 (N.Y. 2d Dep't 2020) ("[W]hen a transfer is made without fair consideration, a presumption of insolvency and fraudulent transfer arises, and the burden shifts to the transferee to rebut that presumption."); *United States v. Alfano*, 34 F. Supp. 2d 827, 845 (E.D.N.Y. 1999) ("Courts view intrafamily transfers made without any signs of tangible consideration as presumptively fraudulent."); *Campos v. V&B Inves. Guttenberg, LLC*, 2024 WL 1178256, at \*4 (S.D.N.Y. Mar. 19, 2024) (granting summary judgment on DCL § 273 claim where defendants transferred COVID-19 relief funds to an insider for no consideration).

In reaching this conclusion, the Court rejects defendants' arguments that plaintiff's DCL claims fail because of defendants' good intentions (*e.g.*, defendants' claim that it transferred the funds to "protect" them from other

15

creditors), the general fungibility of cash, the fact that plaintiff's automated system alerted its representatives to the transfers (the so-called "large transaction alerts"), and/or the absurd claim that no "transfer" occurred within the meaning of the DCL because defendant Niral Patel maintained power of attorney over his co-defendant (and mother's) personal checking account.[9] *See* Dkt. No. 150 at 20–23 (replying to defendants' arguments in opposition to summary judgment on these claims).

In sum, plaintiff's submissions establish that defendants presumptively violated DCL §§ 273 and 274. And viewed in the light most favorable to defendants as the non-movants, the record fails to establish any triable questions of fact related to whether defendants might be able to rebut this legal presumption under the circumstances. *See, e.g.*, *Res. Grp. Int'l Ltd. v. Chishti*, --F. Supp. 3d--, 2026 WL 1192716, at \*5 (S.D.N.Y. May 1, 2026) (recognizing that debtor's intent is ordinarily a fact question but summary judgment can be warranted if plaintiff shows intent by clear and convincing evidence). Accordingly, plaintiff is entitled to summary judgment on Counts One and Two.

Plaintiff is also entitled to summary judgment on its breach-of-contract claim (Count Three). As relevant here, the PPP Notes included a list of events

---

[9] In opposition, defendants also attempt to make hay out of the fact that the PPP rules and regulations do not explicitly restrict where unused funds may be held. Dkt. No. 144 at 28–29. Again, even if true this fact would be irrelevant under the circumstances: it is defendant's conduct with respect to the funds that matters for purposes of the DCL (and it is defendants' representations with respect to their financial condition for purposes of the breach-of-contract claims) that matter.

16

that would qualify as an "Event of Default" permitting the bank to accelerate the loan, including certain false representations made by the borrower or on the borrower's behalf. Pl.'s Facts ¶ 97. When defendant Niral Patel signed the PPP Notes, he represented that the corporate defendants, or any business owned or controlled by them, were not "delinquent" under a federally backed loan. *See, e.g.*, Pl.'s Facts ¶ 32.

As relevant here, plaintiff's submissions establish that some of the corporate defendants (owned and controlled by defendant Niral Patel) were in fact delinquent at that time: four of the corporate defendants (owned and controlled by defendant Niral Patel) were guarantors on a federally backed loan that was delinquent at the time the PPP Notes were executed. *See, e.g.*, Pl.'s Facts ¶ 38.

Plaintiff's submissions further establish that this false representation qualified as an "event of default" that authorized them to accelerate the loans. To the extent that defendants argue this delinquent loan did not qualify as a misrepresentation on the PPP Notes because it had not yet "caused a loss to the government," the Court rejects that argument for each and every reason articulated by plaintiff in both its opening and reply memoranda.

Further, as plaintiff also explains, defendants falsely represented that the PPP funds would be used "to retain workers and maintain payroll or make mortgage interest payments, lease payments and utility payments." Pl.'s Facts ¶ 45. Even viewed in the light most favorable to the non-movants, regardless

17

of the precise terminology that defendants might prefer, and whatever else de-
fendants might or might not have used some of the money for (acknowledging
the fungibility of cash), it is not meaningfully undisputed in the papers that
defendants failed to use the PPP funds—that is, the "paycheck protection pro-
gram" funds loaned to them under the auspices of the CARES Act—to retain
(*i.e.*, protect the paychecks of) at least 200 of their employees. *See* Dkt. No. 150
at 16–20 (addressing defendants' opposition). Accordingly, plaintiff is entitled
to summary judgment on Count Three.

For substantially the same reasons, and for the reasons set forth at
length in plaintiff's memoranda, plaintiff is entitled to summary judgment on
defendants' *counterclaims* for breach of contract, unjust enrichment, and con-
version. *See* Dkt. No. 125-1 at 43–49; *see also* Dkt. No. 150 at 23–26. Even
viewed in the light most favorable to the non-movant, there is no fact dispute
on whether plaintiff's administrative hold for the value of the funds was au-
thorized by the terms and conditions of the account or whether loan forgiveness
was properly denied as to certain corporate defendants. Accordingly, plaintiff's
motion for partial summary judgment will be granted.

**B. Defendants' Motion** (Dkt. Nos. 128–30, 138–42, 146, 151)

First, to the extent that defendants argue they are entitled to summary
judgment against plaintiff's DCL and breach-of-contract claims, Dkt. No. 128
at 20–35, or to summary judgment on their counterclaims for breach of

contract, unjust enrichment, and/or conversion, those arguments must be rejected because, for the reasons explained *supra*, plaintiff has established its entitlement to summary judgment in its favor on those claims.

Defendants go on to argue that plaintiff's "Intellectual Property" or "IP" claims should also be dismissed.  Dkt. No. 128 at 35–41.  Plaintiff's verified amended complaint asserts seven "IP" claims: false designation of origin under the Lanham Act (Count Four); cyberpiracy under the Lanham Act (Count Seven); false advertising and unfair competition under the Lanham Act and related state law (Counts Five, Count Nine, and Count Ten); and trademark infringement under the Lanham Act and related state law (Counts Six and Eight).  Dkt. No. 7.

These claims arise from allegations that defendant Niral Patel registered and used internet domains bearing the names of plaintiff and its officers and employees (including but not limited to "Adirondack Mistrust Company").  According to defendants, these claims "stem solely from [plaintiff's] bruised sense of pride because Defendants sought to publicize how [plaintiff] deeply botched the roll out of the PPP in 2020 and sought to destroy Defendants' business reputation to cover up their flawed efforts." *Id.* at 35.

Upon review, defendants' motion for summary judgment on these claims must be denied.  As plaintiff explains, defendant Niral Patel registered at least twelve internet domains containing various permutations of "Adirondack

19

Trust Company" that redirect to the "Adirondack <u>Mistrust</u> Company," a website controlled by him that uses a logo that is confusingly similar to plaintiff's protected mark. *See* Dkt. No. 146 at 36–47.

Viewed in the light most favorable to plaintiff, the non-movant for purposes of these claims, a reasonable fact-finder could conclude that defendant Niral Patel's conduct in registering these domains not only represented a sophomoric effort by the hastily promoted scion of an otherwise-respectable business family to try to harass or intimidate plaintiff's representatives into abandoning their efforts to recover the PPP funds, but also a bad-faith attempt by defendants to confuse or mislead reasonable consumers in an effort to profit. *See* Dkt. No. 146 at 36–47 (responding to defendants' motion and identifying genuine fact disputes on these claims). Accordingly, defendants' motion for summary judgment on plaintiff's so-called "IP claims" must be denied.

## V.    CONCLUSION

Aside from plaintiff's IP claims arising from defendant Niral Patel's poorly considered decision to register and operate web domains mimicking plaintiff's trade name, virtually all that has remained of this litigation for the last few years was a straightforward dispute over unpaid attorney's fees. But you'd never know that from looking at the docket: the parties have filed a whole mountain range of digital paperwork in connection with this motion practice.

Many of these filings provide context for the litigation. But most of that context is irrelevant to the legal questions that remained in this dispute. So rather than get down into the mud and try to duke it out with the parties, the Court has tried to stay focused on what matters: the transfers to an insider for no consideration for the purpose of dodging creditors and the material misrepresentations made by the borrower in connection with each of the PPP Notes.

Thus, to the extent that the Court has not explicitly parsed a particular argument, examined a particular document, or resolved the disputed characterization of some particular snippet of testimony, the parties should understand that those issues were not overlooked—they were considered and deemed irrelevant for purposes of this motion practice.

In sum, plaintiff's motion for partial summary judgment will be granted. Under the DCL and the PPP Notes, plaintiff is entitled to an award of reasonable attorney's fees. Defendants' motion for summary judgment will be denied. Although defendants' counterclaims must be dismissed, a fact-finder must decide whether defendants' decision to register the "Adirondack Mistrust Company" website and redirect consumers to that portal violated one or more provisions of federal and/or state intellectual property law.

Therefore, it is

ORDERED that

1.   Plaintiff's motion for partial summary judgment (Dkt. No. 125) is GRANTED;

2.  Defendants' motion for summary judgment and to preclude plaintiff's experts (Dkt. No. 128) is DENIED;

3.  Plaintiff is entitled to an award of reasonable attorney's fees in connection with its claims under New York's Debtor and Creditor Law (Counts One and Two) and for breach of contract (Count Three);

4.  Defendants' counterclaims are DISMISSED;

5.  Plaintiff's IP claims (Counts Four through Ten) will proceed to trial;

6.  A trial date on plaintiff's IP claims (Counts Four through Ten) is STAYED and will be RESET pending resolution of plaintiff's application for attorney's fees on Counts One, Two, and Three; and

7.  Plaintiff is directed to submit an application for attorney's fees and costs, together with a supporting memorandum of law and contemporaneous records supporting the requested fees, on or before August 28, 2026.

The Clerk of the Court is directed to terminate the pending motions and set a deadline accordingly.

IT IS SO ORDERED.

David N. Hurd
U.S. District Judge

Dated:  July 22, 2026
        Utica, New York.

22