**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

ADIRONDACK TRUST COMPANY,

*Plaintiff*,

v.

MAHA LAXMI CORP., MAHA LAXMI II CORP., JAGDAMBA INC., JAGDAMBA II CORP., JAGDAMBA III CORP., JAGDAMBA V CORP., JAGDAMBA VI CORP., NORTHEAST DINING & LODGING, INC., POUGHKEEPSIE GC, INC., SYRACUSE GC, INC., NIRAL A. PATEL, and NIRMALA A. PATEL,

*Defendants*.

Index No. 1:21-cv-01334-DNH-ML

**MEMORANDUM OF LAW IN SUPPORT OF**
**ATC'S APPLICATION FOR ATTORNEYS' FEES AND COSTS**

CULLEN AND DYKMAN LLP
80 State Street, Suite 900
Albany, New York 12207
(518) 788-9440

*Of Counsel:*

Christopher E. Buckey, Esq.
Kristen A. Davis, Esq.

*Counsel for Plaintiff*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........ 1

ARGUMENT ........ 2

I. LEGAL STANDARD ........ 2

II. THE HOURLY RATES ARE REASONABLE ........ 3

III. THE HOURS WORKED ARE REASONABLE ........ 4

A. Complaint/Amended Complaint/Removal Motion ........ 5

B. Attachment Motion ........ 7

C. Defendants' Partial Summary Judgment Motion ........ 10

D. Protective Order ........ 11

E. Court Proceedings and Communications with Court ........ 13

F. Written Discovery ........ 15

G. Discovery Disputes ........ 16

H. Depositions ........ 19

I. ATC's Summary Judgment Motion, Defendants' Summary Judgment Motion and Motion to Preclude ........ 20

J. Bankruptcy Complications ........ 21

K. Settlement ........ 22

IV. THE COSTS AND EXPENSES ARE REASONABLE ........ 23

CONCLUSION ........ 23

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Aquavit Pharmaceuticals, Inc. v. U-Bio Med, Inc.*,
No. 19-CV-3351 (VEC/RWL), 2023 WL 2396511 (S.D.N.Y. Feb. 17, 2023) ........ 23

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,
522 F.3d 182 (2d Cir. 2008) ........ 2

*Baker v. Urb. Outfitters, Inc.*,
431 F. Supp. 2d 351 (S.D.N.Y. 2006) ........ 7

*Chae v. Big Ko-Ko Inc.*,
No. 3:22-CV-376, 2024 WL 36586 (N.D.N.Y. Jan. 3, 2024) ........ 3

*Clarke v. Frank*,
960 F.2d 1146 (2d Cir. 1992) ........ 4

*Cleanup N. Brooklyn by Chantrtanapichate v. Brooklyn Transfer LLC*,
373 F. Supp. 3d 398 (E.D.N.Y. 2019) ........ 23

*DiSorbo v. City of Schenectady*,
No. 99-CV-1131 (LEK), 2004 WL 115009 (N.D.N.Y. Jan. 9, 2004) ........ 23

*Hancock v. I.C. Sys., Inc.*,
592 F. Supp. 3d 250 (S.D.N.Y. 2022) ........ 23

*Insinga v. Cooperatieve Centrale Raiffeisen Boerenleenbank B.A.*,
478 F. Supp. 2d 508 (S.D.N.Y. 2007) ........ 7

*J.P. Sedlak Assocs. v. Connecticut Life & Cas. Ins. Co.*,
No. 3:98CV145 (DFM), 2000 WL 852331 (D. Conn. Mar. 31, 2000) ........ 5

*Krause v. Kelahan*,
No. 6:17-CV-1045 (DNH/ATB), 2026 WL 1686147 (N.D.N.Y. June 10, 2026) ........ 3

*Lewis v. City of Albany Police Dep't*,
554 F. Supp. 2d 297 (N.D.N.Y. 2008) ........ 3

*Li Rong Gao v. Perfect Team Corp.*,
No. 10-CV-1637 (ENV/CLP), 2017 WL 9481011 (E.D.N.Y. Jan. 11, 2017) ........ 10, 20

*Lopez v. Bombardier*,
No. 9:22-CV-1143 (ECC/DJS), 2026 WL 1972724 (N.D.N.Y. July 8, 2026) ........ 23

*Lora v. J.V. Car Wash, Ltd.*,
No. 11-CV-9010 (LLS/AJP), 2015 WL 7302755 (S.D.N.Y. Nov. 18, 2015) .......... 22

*Martinez v. City of New York*,
330 F.R.D. 60 (E.D.N.Y. 2019) .......... 19

*Mitland Raleigh-Durham v. Myers*,
840 F. Supp. 235 (S.D.N.Y. 1993) .......... 22

*Oriska Ins. Co. v. Israel Disc. Bank of New York*,
No. 6:17-CV-00910 (MAD/TWD), 2019 WL 2929190 (N.D.N.Y. July 8, 2019) .......... 3

*Serricchio v. Wachovia Sec., LLC*,
706 F. Supp. 2d 237 (D. Conn. 2010) .......... 11, 20

*Stanczyk v. City of New York*,
752 F.3d 273 (2d Cir. 2014) .......... 2

*Tokyo Electron Arizona, Inc. v. Discreet Indus. Corp.*,
215 F.R.D. 60 (E.D.N.Y. 2003) .......... 19

*United Specialty Ins. Co. v. Lux Maint. & Ren. Corp.*,
No. 18-CV-3083 (ER), 2020 WL 4014900 (S.D.N.Y. July 16, 2020) .......... 3

**State Cases**

*Getty Petroleum Corp. v. G.M. Triple S. Corp.*,
187 A.D.2d 483, 589 N.Y.S.2d 577 (2d Dep't 1992) .......... 3

**Federal Statutes**

15 U.S.C. § 1114 .......... 6

15 U.S.C. § 1125(a) .......... 6

15 U.S.C. § 1125(d) .......... 6

**State Statutes**

New York General Business Law § 350 .......... 6

New York's Debtor and Creditor Law Sections 273, 276, and 276-a .......... 5, 21

**PRELIMINARY STATEMENT**

Plaintiff Adirondack Trust Company ("ATC"), by and through its attorneys, Cullen and Dykman LLP, respectfully submits this memorandum of law in support of its application, pursuant to the Court's directive in its July 22, 2026 Decision and Order, for attorneys' fees and costs.[1]

From the inception of this matter in October 2020, Cullen and Dykman employed a blended hourly rate structure for ATC. All attorneys, both partners and associates, have been billed at $415 per hour for work on this matter. The firm has not increased that blended rate during the six years in which it has worked on this matter.

From October 2020 through July 2026, Cullen and Dykman billed a total of $1,213,382.21 to ATC for this matter. This includes $1,200,142 in fees (after application of $11,000 in discounts) and $13,240.21 for costs and expenses. Approximately 2.75% of those fees and expenses are attributable to ATC's trademark claims under the Lanham Act related to Defendants' retaliatory registration of domain names identical or confusingly similar to ATC's trademarks and the names of ATC's employees and specific attorneys at Cullen and Dykman. These fees are not subject to the Court's award of attorneys' fees and, therefore, ATC has reduced the total amount of requested fees, costs and expenses by $33,368.01 to **$1,180,014.20**.

As discussed in detail below, the blended hourly rate, which was not increased during the six years this matter has been litigated, is reasonable. Additionally, the hours worked by the firm over these six years are reasonable given the novelty and complexity of the issues in this litigation and the scorched earth tactics employed by Defendants.

In August 2023, Defendants could have avoided liability for any attorneys' fees, including the $471,379 ATC and the SBA had incurred at that point, and walked away from this litigation.

[1] Submitted with this memorandum is the Declaration of Christopher E. Buckey dated October 13, 2026 ("Buckey Declaration"), which includes contemporaneous records supporting the requested fees and summaries of those fees.

ECF No. 141 ¶ 23. Defendants chose not to and, since that time, ATC has incurred an additional $742,002.72 in fees, costs and expenses in this matter, which is approximately 61% of the total fees, costs and expenses.

## ARGUMENT

### I. LEGAL STANDARD

In its July 22, 2026 Decision and Order, this Court granted ATC "an award of reasonable attorney's fees in connection with [ATC's] claims under New York's Debtor and Creditor Law (Counts One and Two) and for breach of contract (Count Three)." ECF No. 152. The Second Circuit calculates attorneys' fees using the lodestar method. *Stanczyk v. City of New York*, 752 F.3d 273, 284 (2d Cir. 2014) (requiring district courts to determine the "lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—[which] creates a presumptively reasonable fee."). The lodestar is "what a reasonable, paying client would be willing to pay." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 184 (2d Cir. 2008).

The lodestar is calculated by considering

> factors including, but not limited to, the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Id.*

As discussed below, ATC's attorneys' fees are exceedingly reasonable and should be awarded in full.

## II. THE HOURLY RATES ARE REASONABLE

As a general rule, the "reasonable hourly rate [for an attorney] should be based on the customary fee charged for similar services by lawyers in the community with like experience and of comparable reputation to those by whom the prevailing party was represented." *Getty Petroleum Corp. v. G.M. Triple S. Corp.*, 187 A.D.2d 483, 589 N.Y.S.2d 577 (2d Dep't 1992) (reversing trial court's reduction of awarded attorneys' fees where "there [was] nothing in the record to indicate what counsel's reputation in the community was, or why it warranted such a reduction"). Although the burden is on the fee applicant to establish the prevailing hourly rate and the nature of the work performed through contemporaneous time records, the Court "may also use its knowledge of the relevant market when determining the reasonable hourly rate." *United Specialty Ins. Co. v. Lux Maint. & Ren. Corp.*, No. 18-CV-3083 (ER), 2020 WL 4014900, at *3 (S.D.N.Y. July 16, 2020).

Here, the relevant community and market is the Northern District of New York. The prevailing rates in the Northern District of New York are $365 for experienced attorneys, $200 for associates and $100 for paralegals. *Krause v. Kelahan*, No. 6:17-CV-1045 (DNH/ATB), 2026 WL 1686147, at *3 (N.D.N.Y. June 10, 2026) (finding these hourly rates reasonable when deciding fee application); *Chae v. Big Ko-Ko Inc.*, No. 3:22-CV-376, 2024 WL 36586, at *2 (N.D.N.Y. Jan. 3, 2024) (same).

ATC respectfully submits that an upward departure from the prevailing rates should be awarded because this case involved complex and novel issues. *Oriska Ins. Co. v. Israel Disc. Bank of New York*, No. 6:17-CV-00910 (MAD/TWD), 2019 WL 2929190, at *5 (N.D.N.Y. July 8, 2019) (awarding higher rate because the "case involves somewhat complex commercial litigation"); *Lewis v. City of Albany Police Dep't*, 554 F. Supp. 2d 297, 300 (N.D.N.Y. 2008), *aff'd*, 332 F.

App'x 641 (2d Cir. 2009) (awarding higher rates to less experienced attorney because "it is an untenable proposition that an attorney exhibiting the competence and skill ordinarily expected only of a highly experienced attorney should not be compensated to the same degree merely due his (relatively) short tenure in the profession.").

Due to the complexity and length of this case and the myriad of procedural and substantive issues litigated before this Court and in Bankruptcy Court, thirteen attorneys and three paralegals worked on this matter.[2] From its inception in October 2020, ATC was charged a blended rate of $415 per hour in this matter for all attorneys regardless of experience.[3] This rate is significantly less than the average partner rate at the firm and within the average range of the associates' rates. The standard hourly rates for the attorneys who worked on this matter are as follows: Christopher E. Buckey ($675-$900); Nicholas J. Faso ($525-$650); Kristen A. Davis ($375-$450); Timothy Chorba ($350-$475); Jean-Pierre D. van Lent ($730); Karen Levin ($700); Michelle McMahon ($835); Ariel E. Ronneburger ($415-$615); Matthew G. Roseman ($850-$945); Andrew M. Thaler ($675-$695); Elizabeth Usinger ($680); Jocelyn E. Lupetin ($425-$550); and Ann K. Phillips ($350-$450). Significantly, the rate has remained unchanged throughout the six-year duration of this matter, despite substantial increases in the firm's standard hourly rates during those six years.

These factors demonstrate that ATC received a reasonable rate for the legal services provided.

## III. THE HOURS WORKED ARE REASONABLE

In assessing the reasonableness of the hours worked, "the court looks to 'its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties.'" *Clarke v. Frank*, 960 F.2d 1146, 1153 (2d Cir. 1992). This was not a routine

[2] The qualifications of each attorney and paralegal are set forth in the Buckey Declaration.
[3] The paralegal rates ranged from $150 to $175.

collection action. Over nearly six years, ATC was forced to litigate in state court, federal court, and parallel bankruptcy proceedings against twelve Defendants who vigorously contested nearly every issue and asserted counterclaims seeking more than $10 million, while Niral Patel repeatedly harassed and threatened ATC's officers and employees, necessitating Magistrate Judge Lovric's intervention. The hours expended were driven by the scope of Defendants' fraudulent use of the PPP funds and the manner in which Defendants chose to litigate—not by any inefficiency on the part of ATC's counsel. A party that "aggressively transform[s] and escalate[s] a dispute . . . into a difficult, lengthy, complicated and personal legal battle" cannot be heard to complain about the time its adversary was required to spend in response. *J.P. Sedlak Assocs. v. Connecticut Life & Cas. Ins. Co.*, No. 3:98CV145 (DFM), 2000 WL 852331, at *6 (D. Conn. Mar. 31, 2000). Indeed, Defendants themselves acknowledged in their summary judgment briefing that ATC's fees would likely approach "nearly $1 million," confirming that the scope of this litigation was apparent to all parties. ECF No. 151 at 8.

To assist the Court's analysis, below is a division of the work performed based on specific categories of work. The hours worked for each category are supported by contemporaneous time records.

**A. Complaint/Amended Complaint/Removal Motion**

ATC initiated this action by filing a Verified Complaint in New York State Supreme Court (Index No. EF2020-2516, Saratoga County) on October 12, 2020, asserting claims relating to fraudulent conveyance under New York's Debtor and Creditor Law Sections 273, 276, and 276-a, and breach of contract on ten PPP promissory notes totaling $1,979,600.00, with individual loan amounts ranging from $25,100.00 (Maha Laxmi Corp.) to $357,900.00 (Syracuse GC, Inc.).



45057751

On December 1, 2021, ATC filed a Verified Supplemental and Amended Complaint, which reasserted the PPP Loan Claims and added a series of federal and state trademark-related claims (Fourth through Tenth Causes of Action) arising from Defendants' retaliatory and extortionary conduct against ATC and its employees following commencement of this action. Specifically, on or about October 14 and 17, 2021, Defendants registered twelve domain names identical or confusingly similar to ATC's federally registered trademarks and the names of ATC's employees, including charleswaitadirondacktrust.com, michaeloconnelladirondacktrust.com, edwardhartadirondacktrust.com, adirondackmistrust.com, and others, including specific attorneys at Cullen and Dykman, which redirected to ATC's competitors' websites.

These trademark claims included causes of action under the Lanham Act for false designation of origin (15 U.S.C. § 1125(a)), trademark infringement (15 U.S.C. § 1114), and cyberpiracy (15 U.S.C. § 1125(d)), as well as common law unfair competition and false advertising under New York General Business Law § 350.

The Amended Complaint detailed Defendants' fraudulent misrepresentations in their PPP applications, including false certifications regarding their eligibility and intended use of funds, the unauthorized transfer of $1,924,000.00 in PPP funds to Nirmala Patel's personal account on or about May 7, 2020, and the subsequent misuse of those funds for impermissible purposes including mortgage payments, stock market speculation totaling more than $555,000.00 on margin, and personal expenses—all while Defendants had at least $20 million in known liabilities, including approximately eighty federal and state tax liens, warrants, and judgments totaling over $6.6 million.

On December 10, 2021, Defendants removed the action to federal court (ECF No. 1) based on the federal Lanham Act claims. On December 15, 2021, Defendants filed their Answer and

Counterclaims (ECF No. 8), asserting three counterclaims against ATC for breach of contract, unjust enrichment, and conversion, and seeking damages in excess of $10,000,000.

ATC's attorneys were required to prepare and file a detailed Reply to Counterclaims on January 3, 2022 (ECF No. 10), denying Defendants' baseless allegations and asserting fourteen affirmative defenses including that Defendants' conduct, including making material misrepresentations in the PPP loan applications, justified enforcement and protection of ATC's rights, and the SBA's rights, under the PPP Notes. The Amended Complaint addressed twelve named Defendants—ten corporate entities and two individual guarantors—necessitating careful analysis of each entity's role in this unprecedented fraudulent scheme.

ATC's attorneys expended approximately 164.7 hours on the Complaint, the Amended Complaint, and related pleadings. The time expended on these pleadings was reasonable and necessary given the novel intersection of PPP loan fraud, fraudulent conveyance claims, and retaliatory trademark violations. *Insinga v. Cooperatieve Centrale Raiffeisen Boerenleenbank B.A.*, 478 F. Supp. 2d 508, 511 (S.D.N.Y. 2007) (holding 150 hours spent "drafting, editing, and reviewing the Complaint" was reasonable because "that careful attention to the drafting of the Complaint obviated the time and expense that might have been incurred defending against a motion to dismiss."); *Baker v. Urb. Outfitters, Inc.*, 431 F. Supp. 2d 351, 361 (S.D.N.Y. 2006), *aff'd*, 249 F. App'x 845 (2d Cir. 2007) (allowing recovery of hours spent consulting with client regarding Complaint).

**B. Attachment Motion**

ATC's attorneys were required to prepare and file extensive motion papers seeking an order of attachment and preliminary injunction against Defendants, necessitated by Defendants' documented history of asset dissipation and the imminent threat of judgment execution by other

creditors. This motion practice was essential at that time to preserve ATC's ability to recover the misappropriated PPP funds that Defendants had fraudulently transferred to personal accounts.

The attachment motion was filed in December 2020 to secure the PPP loan proceeds, approximately $1,924,000.00 of which had been transferred to Defendant Nirmala Patel's account on May 7, 2020. ATC's Collections Manager and In-House Counsel Edward Connell only discovered this transfer on September 23, 2020, while investigating a routine delinquency on Ms. Patel's home equity line of credit.

At that time, Defendants had at least $20 million in known liabilities, including: (A) a $2.85 million BankUnited action pending in Suffolk County with a summary judgment motion returnable on October 19, 2020; (B) a $10 million foreclosure action in Saratoga County (*SDI Matto JV Holdco LLC v. Ambica M&J Two LLC, et al.*, Index No. 20152201) where judgment was entered in July 2017; and (C) approximately eighty federal and state tax liens, warrants, and judgments.

Cullen and Dykman's work included analysis of the factors establishing insolvency of a debtor, drafting the memorandum of law in support of the attachment motion, preparing the supporting Affidavit of Edward M. Connell filed on December 24, 2020, and compiling exhibits demonstrating Defendants' fraudulent conduct.

The attachment motion was stayed in January 2021 when Defendants Maha Laxmi II Corp. and Jagdamba II Corp. filed bankruptcy petitions. Defendants thereafter changed counsel and, on September 2, 2021, filed extensive opposition to the attachment motion, including a forensic accounting report from Stephen Ferraro and the Affidavit of Niral A. Patel. It was at this point that Defendants reversed their prior position and contended that the automatic bankruptcy stay did not apply to the non-filing Defendants.

On October 21, 2021, ATC submitted reply papers including an expert forensic accounting report from BST & Co., CPAs ("BST"). BST analyzed Defendants' financial transactions, including the $1,924,000.00 transfer to Nirmala Patel's personal account and the subsequent misuse of those funds. ATC's attorneys worked extensively with BST, including coordinating video sessions and meetings to review documents for the forensic accounting analysis, preparing and modifying the expert report and affidavit, and developing strategy for presenting the forensic accounting findings. On October 12 and 14, 2021, ATC's attorneys worked with BST to provide factual information and records for the initial expert report and supporting affidavit, and conducted multiple strategy calls regarding the forensic accounting review.

Defendants submitted the Sur-Reply Affidavits of both Niral Patel and Stephen Ferraro filed on November 29, 2021, together with a Forensic Accounting Report dated November 29, 2021.

Supreme Court did not decide the attachment motion because Defendants removed the case to this Court on December 10, 2021.

Rather than redo the entire attachment motion, ATC requested that this Court issue an expedited ruling on the attachment motion by letter dated February 10, 2022 (ECF No. 21), filed jointly with Defendants' consent. ATC made this request after learning that one of Defendants' creditors, BankUnited, was poised to enter a judgment in excess of $2.5 million against Nirmala Patel and several Corporate Defendants, which could jeopardize the SBA's ability to recover the PPP loan proceeds. Both parties agreed to referral of the attachment motion to Magistrate Judge Lovric.

This Court denied ATC's request to consider the attachment motion, ruling pursuant to Local Rule 81.4 that the Court would not consider a motion filed in state court unless refiled in

accordance with the Local Rules of the Northern District of New York. Despite this procedural obstacle—created by Defendants' strategic removal of the action—the time expended was entirely reasonable because the motion was necessary to protect ATC's recovery given Defendants' demonstrated pattern of asset dissipation and the urgent threat of competing creditor judgments at that time. ATC's attorneys expended approximately 277.7 hours on the attachment motion. *Li Rong Gao v. Perfect Team Corp.*, No. 10CV1637ENVCLP, 2017 WL 9481011, at *9 (E.D.N.Y. Jan. 11, 2017), *report and recommendation adopted*, No. 10-CV-1637(ENV/CLP), 2017 WL 1857234 (E.D.N.Y. May 8, 2017), *aff'd sub nom*. *Xiao Hong Zheng v. Perfect Team Corp.*, 739 F. App'x 658 (2d Cir. 2018) (awarding attorneys' fees for "nearly 200 hours in fees incurred in connection with her motion for prejudgment attachment, which was not granted").

### C. Defendants' Partial Summary Judgment Motion

On February 2, 2023, Defendants filed a motion for partial summary judgment (ECF No. 44) seeking dismissal of the First, Second, and Third Causes of Action (the PPP Loan Claims), based solely on the contention that ATC lacked standing to pursue its claims because ATC had assigned the PPP Loans to the SBA in November 2021. ATC's attorneys were required to analyze and respond to Defendants' standing arguments, prepare opposition papers (ECF Nos. 54-58) including a memorandum of law (ECF No. 54), supporting Affidavit of Christopher E. Buckey with exhibits (ECF No. 55), the Declaration of David R. Reaves (an SBA official) with exhibits (ECF No. 57), the Affidavit of Edward M. Connell (ECF No. 56), and ATC's Response to Defendants' Statement of Material Facts (ECF No. 58).

On February 28, 2023, the Court stayed the deadlines related to the pending partial summary judgment motion for ninety days at the request of the U.S. Attorney's Office for the Northern District of New York, which was investigating potential PPP civil fraud by Defendants—

underscoring the serious nature of Defendants' alleged misconduct (ECF No. 62). This stay required coordination between ATC's litigation strategy and the federal civil investigation. On July 25, 2023, Defendants sought permission to withdraw their partial motion for summary judgment without prejudice with the intention to refile at the conclusion of discovery (ECF No. 71), which was an effective concession that their standing argument lacked merit because discovery was not necessary to determine standing. *Serricchio v. Wachovia Sec., LLC*, 706 F. Supp. 2d 237, 259 (D. Conn. 2010), *aff'd*, 658 F.3d 169 (2d Cir. 2011) (finding 294 hours spent opposing summary judgment motion on complex issue reasonable).

ATC's attorneys expended approximately 169.7 hours in connection with Defendants' partial summary judgment motion.

**D. Protective Order**

ATC's attorneys were required to seek a protective order to preclude Defendants from deposing certain ATC witnesses—motion practice that was necessitated entirely by Defendants' scorched earth discovery approach and efforts to harass ATC's senior management.

On April 5, 2024, ATC filed a letter motion (ECF No. 79) seeking leave to file a motion for protective order precluding "Apex" depositions of ATC's senior executives, including Charles V. Wait, Sr. (ATC's Chairman of the Board), Charles V. Wait, Jr. (ATC's Chief Executive Officer and President), and Natalie I. Wait (ATC's former Vice President, Regulatory Affairs). ATC argued that these individuals lacked personal knowledge of the matters at issue—specifically, the ten PPP loans made to Defendants for nearly $2 million, the decisions to approve the loans, the decisions to deny forgiveness applications, and the decision to place an administrative hold on Nirmala Patel's account—and that Defendants' deposition requests were calculated to harass ATC's highest-ranking executives rather than develop the factual record.

By text order dated April 16, 2024 (ECF No. 86), the Court granted ATC permission to file its motion for protective order by May 13, 2024. Following a meet and confer on March 26, 2024 and additional discussions in April 2024, the parties reached a preliminary agreement that Defendants would first depose Edward Connell, Edward Hart (Senior Vice President), Michael O'Connell (Executive Vice President), and Michael Murray (Vice President), with Defendants reserving the right to depose the Wait family members following these initial depositions and ATC reserving its right to seek a protective order precluding the additional depositions.

ATC filed a status report on May 8, 2024 (ECF No. 88) requesting an extension of the deadline to file its protective order motion to May 27, 2024 to finalize these agreements. The parties confirmed this agreement in a May 24, 2024 status report (ECF No. 94). The protective order issues were ultimately addressed at the June 17, 2024 in-person hearing before Magistrate Judge Lovric. By Text Order dated June 17, 2024 (ECF No. 95), the Court confirmed that, pursuant to ATC's status report and as confirmed by all counsel at the hearing, the Apex deposition dispute had been resolved by the parties for the time being and was therefore moot—an outcome achieved only through ATC's motion practice and negotiations.

ATC was again required to seek protective relief in October 2024, after Defendant Niral A. Patel engaged in threatening ex parte communications with ATC's executives intended to force ATC to settle on Patel's terms. On October 10, 2024, ATC filed a letter motion (ECF No. 101) supported by the affidavit of Charles V. Wait, Jr. (ECF No. 102). Following an on-the-record conference on October 16, 2024, the Court directed ATC to file proposed protective and confidentiality orders addressing (a) limitations on communications between the individual Defendants and ATC's executives and (b) restrictions on the dissemination of litigation materials. ECF No. 106. ATC filed its proposed orders on October 17, 2024. ECF No. 107. At the October

18, 2024 in-person hearing, the Court granted ATC's motion with limited exceptions, ordered the individual Defendants to immediately cease any further ex parte communications, directly or indirectly, with ATC and its executives, management, board members, trustees, and employees, cautioned that violations may result in sanctions, and approved both protective orders. ECF Nos. 108, 109, 110.

ATC's attorneys expended approximately 90.3 hours on protective order practice. The time expended on protective order practice was entirely reasonable given Defendants' aggressive discovery tactics targeting ATC's senior leadership, requiring ATC to research and brief the Apex doctrine to shield its executives from discovery harassment, and Patel's harassment of ATC personnel, which required ATC to prepare and obtain two Court-approved protective orders.

**E. Court Proceedings and Communications with Court**

Throughout this litigation, Cullen and Dykman's attorneys expended significant time preparing for and participating in court conferences and communications with the Court—proceedings that were multiplied by the complexity of the issues, the involvement of federal authorities, and Defendants' persistent misconduct.

The case involved numerous telephone and Microsoft Teams conferences with Magistrate Judge Lovric, as well as in-person hearings in Binghamton, New York. The Initial Conference was held on February 9, 2022, following ATC's detailed status report filed on February 4, 2022 (ECF No. 17) outlining the procedural history and current status of the case. On February 10, 2022, ATC filed a joint letter request (ECF No. 21) with Defendants' consent, seeking an expedited ruling on the attachment motion due to the threat of the BankUnited judgment.

The Court held status conferences on May 13, 2022 and August 23, 2022, followed by entry of a scheduling order on November 4, 2022. ECF No. 37. ATC's attorneys prepared and filed

multiple status reports as required by the Court's orders, including a detailed joint status report filed on August 11, 2022 (ECF No. 27) addressing document production deadlines and proposing revised discovery schedules, and a joint status report filed on October 18, 2023 (ECF No. 73) noting that the parties had continued to work diligently to complete document discovery and resolve prior discovery disputes.

The Court held Rule 37.1 conferences on January 19, 2023 and February 27, 2023 to address discovery disputes. At the February 27, 2023 teleconference, the Court and the parties discussed the request by the U.S. Attorney's Office that the parties seek an administrative stay of litigation for three months to facilitate the federal fraud investigation. The Court thereafter stayed the deadlines until May 31, 2023. The U.S. Attorney's Office subsequently requested an additional ninety-day extension of the stay, which ATC consented to.

Following expiration of the administrative stay, the parties filed a joint letter on July 7, 2023 (ECF No. 64) requesting a conference with the Court to discuss implementing a scheduling order. On July 10, 2023, Defendants' counsel requested a brief adjournment of a scheduled teleconference due to scheduling conflicts. ECF No. 66. On October 26, 2023, the parties met with Magistrate Judge Lovric to discuss the status of the matter, following which the parties jointly requested mediation before the Court for the week of January 21, 2024. ECF No. 75.

The on-the-record conference on October 26, 2023 and multiple hearings in 2024 addressed discovery disputes and protective orders. The in-person hearing on June 17, 2024 addressed Defendants' motion to compel and ATC's protective order requests. At that hearing, the Court acknowledged the good faith of both parties and denied Defendants' request for fees and costs.

Additional in-person hearings were held on October 18, 2024 and October 25, 2024 to address Patel's harassment of ATC executives and alleged improper Wikipedia postings about

ATC—misconduct that required immediate judicial intervention and consumed additional attorney time that would otherwise have been unnecessary. In total, ATC's attorneys expended approximately 89.0 hours on court proceedings and communications with the Court.

**F. Written Discovery**

ATC's attorneys were required to conduct extensive written discovery, including the preparation and service of multiple sets of interrogatories and document demands, as well as subpoenas to third-party financial institutions—work that was essential to trace the intricate web of Defendants' fraudulent fund transfers.

Additionally, Defendants served interrogatories and document demands on ATC on or about September 24, 2021, including a First Set of Document Demands containing 131 separate demands; ATC served written responses to each of those demands on September 2, 2022, after the parties agreed that the bankruptcy stay did not apply to the non-filing Defendants. Defendants subsequently served a Second Set of Document Demands containing forty-nine (49) additional demands, to which ATC served written responses on May 23, 2024.

ATC served Supplemental Requests for Production on October 26, 2022, seeking additional documents including those related to Defendants' business operations, payroll records, credit card statements, and accounts with other financial institutions. ATC served a Third Set of Requests for Production and Second Set of Interrogatories in April 2024, requiring Defendants to identify categories of alleged damages on a Defendant-by-Defendant basis.

ATC also served subpoenas on financial institutions including TD Ameritrade, Webull Financial, JPMorgan Chase, and other banks to obtain records of Defendants' financial transactions, including evidence that Niral Patel transferred approximately $274,396.96 from Northeast Dining & Lodging's operations to his personal TD Ameritrade brokerage account and

purchased over $555,110.86 in stocks and options on margin during August and September 2020—at a time when he claimed his businesses were "devastated" by the pandemic and failed to pay or rehire 271 laid-off employees.

ATC's attorneys reviewed voluminous document productions from Defendants, including five separate productions, and analyzed bank records to trace the misappropriated PPP funds, including transfers to Nirmala Patel's personal account ending in 8819 and subsequent transfers to accounts at TD Ameritrade, Webull Financial, and JPMorgan Chase.

ATC's attorneys expended approximately 332.6 hours on written discovery. The breadth of written discovery was necessitated by the complex, multi-entity nature of Defendants' fraudulent scheme and their pattern of moving funds through multiple accounts to evade detection. Defendants, not ATC, controlled the records needed to trace the misappropriated PPP funds, but Defendants refused to produce and/or denied possessing those records. Thus, ATC could only obtain those records through insistence that Defendants adequately respond to ATC's discovery demands and through extensive third-party subpoena practice.

### G. Discovery Disputes

There were extensive discovery disputes throughout this litigation—disputes that were driven primarily by Defendants' deficient responses to ATC's discovery requests and their aggressive challenges to ATC's properly asserted privileges. ATC's attorneys prepared multiple deficiency letters addressing Defendants' discovery deficiencies, including letters dated October 25, 2022, January 24, 2023, January 26, 2023, March 11, 2024, and March 20, 2024.

On January 24, 2023, ATC's counsel warned that if Defendants did not provide their response to the Supplemental Request and all responsive documents by January 27, 2023, ATC would be forced to seek the Court's intervention. On January 30, 2023, ATC filed a Rule 37.1

letter motion (ECF No. 42) seeking a pre-motion conference to file a motion to compel discovery responses from Defendants, addressing two primary discovery issues: (1) Defendants' failure to respond to ATC's Supplemental Request for Production served on October 26, 2022, despite multiple deadline extensions; and (2) Defendants' incomplete responses and deficiencies in their production related to ATC's Notice of Discovery and Inspection served on December 6, 2021. On April 12, 2024, ATC filed a Rule 37.1 letter motion (ECF No. 83) requesting a pre-motion conference and seeking leave to file a motion to compel Defendants to sufficiently respond to ATC's interrogatories and document requests.

Defendants also engaged in discovery motion practice. Defendants filed a letter motion on October 25, 2022 (ECF No. 34) challenging ATC's privilege log, which led to a conference on November 2, 2022 (ECF No. 35) and extended discovery deadlines. Defendants subsequently filed a Rule 37.1 letter motion on January 11, 2023 (ECF No. 40) seeking to compel ATC to produce additional documents and amend its privilege log. ATC was directed to provide an updated Privilege Log by February 9, 2023. ATC's attorneys prepared an Amended Privilege Log containing detailed descriptive codes to explain the basis for each privilege assertion through careful review of each entry.

Defendants insisted on a more detailed privilege log, including entries for all communications *after* litigation commenced where counsel was included—demands that greatly increased the hours required to prepare and amend the privilege log. On April 5, 2024, Defendants filed a Motion to Compel (ECF No. 81) supported by a thirty-page Memorandum of Law (ECF No. 81-1), seeking production of documents Defendants claimed were improperly withheld, including all communications involving Edward Connell, ATC's in-house litigation counsel and Collections Manager, and all communications with the SBA.

ATC's attorneys prepared papers opposing Defendants' motion to compel (ECF No. 92), including affidavits from Edward M. Connell (ECF No. 90) and Michael O'Connell (ECF No. 91) explaining the basis for privilege claims and Mr. Connell's dual role as ATC's in-house litigation counsel and Collections Manager. The opposition required thorough analysis of the attorney-client privilege as applied to dual-role in-house counsel, the common interest doctrine, and applicable Second Circuit precedent—privilege issues that demanded careful legal analysis.

The June 17, 2024 in-person hearing before Magistrate Judge Lovric addressed the privilege log issues in detail. Notably, the Court found no bad faith on ATC's part, stating: "I don't think there's any bad faith on anybody's part here," and expressly denied Defendants' request for sanctions. The Court ordered ATC to conduct a further review of certain privilege log entries and produce non-privileged attachments with appropriate redactions. To produce a privilege log with the detail requested by Defendants, ATC expended approximately 137 hours compiling the supplemental privilege log, which consisted of thirty-eight (38) pages. The majority of the emails on the privilege log consisted of emails with ATC's outside counsel after the commencement of litigation. ATC ultimately provided this detailed information for these emails even though Local Rule 26.5 expressly exempts "written or electronic communications between a party and its trial counsel after commencement of the action and the work product material created after the commencement of the action."

ATC's attorneys expended approximately 526.6 hours on discovery disputes. The time expended on discovery disputes was directly attributable to Defendants' persistent and unnecessary challenges to ATC's privilege claims and Defendants' repeated failures to comply with their discovery obligations. As ATC advised Defendants at the time, its motion practice was the product of Defendants' "two year history of recalcitrance," including repeated promises to

supplement their document production that went unfulfilled. Notably, the Court found no bad faith on ATC's part and denied Defendants' request for sanctions—confirming that ATC's positions were taken in good faith and that the time spent defending them was warranted. *Tokyo Electron Arizona, Inc. v. Discreet Indus. Corp.*, 215 F.R.D. 60, 64 (E.D.N.Y. 2003) (finding 192 hours reasonable in connection with discovery disputes); *Martinez v. City of New York*, 330 F.R.D. 60, 88 (E.D.N.Y. 2019) (finding 303 hours reasonable in connection with discovery disputes).

**H. Depositions**

ATC's attorneys expended significant time preparing for and conducting depositions of three witnesses—work that proved essential to developing the evidentiary record that ultimately supported summary judgment in ATC's favor.

Defendants sought to depose multiple ATC executives with little or no personal knowledge of the relevant facts, including Charles V. Wait, Sr. (Chairman of the Board), Charles V. Wait, Jr. (CEO and President) and Natalie I. Wait (former Vice President, Regulatory Affairs). Defendants also insisted on taking duplicative depositions of Mr. Connell, Edward Hart (Senior Vice President), Michael Murray (Vice President), and Michael O'Connell (Executive Vice President). The excessive deposition requests necessitated ATC's protective order practice. Following the parties' agreement, Defendants first deposed the lower-level officers before seeking depositions of the Wait family members.

ATC prepared and served Rule 30(b)(6) notices of deposition on Defendants seeking corporate testimony on designated topics. ATC's attorneys conducted the depositions of Niral Patel on October 22, 2024 and Nirmala Patel on October 25, 2024.

ATC also prepared for and defended the depositions of Edward M. Connell, Charles V. Wait, Jr., Natalie I. Wait, Edward Hart, Michael O'Connell, and Michael Murray.

Deposition preparation included extensive review of Defendants' five volumes of document productions, analysis of bank records tracing fund transfers, review of PPP loan applications, and preparation of detailed examination outlines.

ATC's attorneys expended approximately 245.9 hours on depositions, including taking three depositions and defending six depositions. The time expended on depositions was reasonable given the importance of obtaining testimony from the individual Defendants who orchestrated the fraudulent transfers and the need to untangle the complex factual record across multiple entities and because Defendants insisted on taking depositions of ATC senior management with little or no personal knowledge of the relevant facts. *Li Rong Gao v. Perfect Team Corp.*, 2017 WL 9481011, at *16-18 (finding 147 hours spent on deposition of multiple witnesses and discovery motions was reasonable); *Serricchio v. Wachovia Sec., LLC*, 706 F. Supp. 2d 237, 256 (D. Conn. 2010), *aff'd*, 658 F.3d 169 (2d Cir. 2011) (finding 141.25 hours spent preparing for, taking, and defending depositions was reasonable).

### I. ATC's Summary Judgment Motion, Defendants' Summary Judgment Motion and Motion to Preclude

The parties both moved for summary judgment on April 4, 2025. ATC's motion included a detailed memorandum of law (ECF No. 125-1), the Declarations of Christopher E. Buckey and Edward Connell with numerous exhibits (ECF Nos. 126, 127), a 153-paragraph Statement of Material Facts (ECF No. 125-2), Defendants' FAZ & Associates forensic accounting expert report, witness affidavits, deposition transcripts from Niral Patel, Nirmala Patel, Edward Connell, Michael O'Connell, Edward Hart, Charles V. Wait, Jr., and Natalie I. Wait, and extensive documentary evidence including bank records, PPP loan applications, and tax lien records.

Defendants also filed their motion to preclude ATC's expert on April 4, 2025 (ECF Nos. 128-130), requiring ATC to prepare opposition papers (ECF Nos. 133-145)

The summary judgment briefing included three separate court filings by both parties and required extensive legal research regarding claims under New York's Debtor and Creditor Law, fraudulent conveyance standards under DCL §§ 273, 274, and 276, PPP loan regulations under the CARES Act, SBA Standard Operating Procedures, standing requirements, and expert disclosure requirements. The briefing addressed Defendants' prior partial summary judgment arguments that ATC lacked standing and/or its claims were moot because Defendants had repaid $1,745,184.87 to the SBA, which ATC demonstrated was legally incorrect because ATC's claim for attorneys' fees under DCL § 276-a remained viable.

ATC's attorneys expended approximately 846.5 hours on the summary judgment motions, the motion to preclude, and expert reports. The Court ultimately granted ATC's summary judgment motion on Counts One, Two, and Three, and denied Defendants' summary judgment motion and motion to preclude, as is reflected in the Court's July 22, 2026 Decision and Order—a complete vindication of ATC's legal positions.

**J. Bankruptcy Complications**

ATC's attorneys expended substantial time addressing complications arising from the bankruptcy filings of certain Defendant entities—proceedings that added another layer of complexity to this already intricate litigation.

On January 11, 2021, Defendant Maha Laxmi II Corp. filed a bankruptcy petition in the U.S. Bankruptcy Court for the Northern District of New York under the caption *In re Maha Laxmi II Corp.* (Case No. 21-10016-1-rel), and Defendant Jagdamba II Corp. filed a bankruptcy petition under the caption *In re Jagdamba II Corp.* (Case No. 21-10015-1-rel). These cases were later consolidated for administrative purposes under the caption *In re Ambica M&J Two LLC* (Case No. 21-10014-1-rel) (the "Consolidated Bankruptcy Proceeding") and converted to Chapter 7. On



45057751

February 24, 2021, the Office of the United States Trustee appointed Christian H. Dribusch, Esq. as the Chapter 7 Trustee for both estates.

ATC's attorneys expended approximately 84.4 hours on bankruptcy-related issues. The time expended on bankruptcy-related issues was necessitated by the unique convergence of state law fraudulent conveyance claims, federal PPP loan fraud issues, and parallel bankruptcy proceedings. *Mitland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) (allowing recovery of fees associated with bankruptcy because plaintiff would be unable to prosecute its case without vacating the automatic stay); *Lora v. J.V. Car Wash, Ltd.*, No. 11CIV9010LLSAJP, 2015 WL 7302755, at *6 (S.D.N.Y. Nov. 18, 2015) (allowing recovery of fees associated with bankruptcy because the work was necessary to the prosecution of the case).

**K. Settlement**

ATC attempted to engage in meaningful settlement communications with Defendants throughout the course of this litigation, notwithstanding Defendants' bad faith conduct and meritless positions.

As noted in the October 18, 2023 Joint Status Report (ECF No. 73), the parties had been discussing a potential settlement in addition to working through discovery. The parties requested in-person conferences with the Court on multiple occasions to address the status of the case and potential resolution, including the July 7, 2023 joint letter (ECF No. 64) following expiration of the administrative stay imposed at the request of the U.S. Attorney's Office. On November 13, 2023, the parties jointly requested mediation before the Court for the week of January 21, 2024 (ECF No. 75).

ATC's attorneys expended approximately 70.1 hours on settlement communications. The time expended on settlement communications was reasonable given the extraordinary complexity

of coordinating resolution among ATC, the SBA, the Chapter 7 Trustee, the U.S. Attorney's Office, and competing creditors.

## IV. THE COSTS AND EXPENSES ARE REASONABLE

In addition to its attorneys' fees, ATC seeks reimbursement of costs and expenses incurred in prosecuting this action. The costs and expenses ATC incurred fall into the following categories: (a) travel to court appearances; (b) court filing fees; (c) deposition costs, including transcripts and interpreter costs; (d) postage; (e) e-discovery vendor costs; (f) legal research costs related to LexisNexis and Westlaw; and (g) service fees. Courts in this Circuit routinely award each of these categories of costs. *Hancock v. I.C. Sys., Inc.*, 592 F. Supp. 3d 250, 258 (S.D.N.Y. 2022) (awarding filing fees, service fees, and postage fees); *Lopez v. Bombardier*, No. 9:22-CV-1143 (ECC/DJS), 2026 WL 1972724, at *2 (N.D.N.Y. July 8, 2026) (awarding deposition transcript fees); *DiSorbo v. City of Schenectady*, No. 99-CV-1131 (LEK), 2004 WL 115009, at *5 (N.D.N.Y. Jan. 9, 2004) (awarding travel costs); *Aquavit Pharmaceuticals, Inc. v. U-Bio Med, Inc.*, No. 19-CV-3351 (VEC/RWL), 2023 WL 2396511, at *25 (S.D.N.Y. Feb. 17, 2023), *report and recommendation adopted sub nom. Aquavit Pharms., Inc. v. U-Bio Med, Inc.*, 2023 WL 2584198 (S.D.N.Y. Mar. 21, 2023) (awarding e-discovery costs and translation expenses); *Cleanup N. Brooklyn by Chantrtanapichate v. Brooklyn Transfer LLC*, 373 F. Supp. 3d 398, 408 (E.D.N.Y. 2019) (awarding fees for Westlaw services). Accordingly, the $13,240.21 in costs and expenses incurred by ATC are reasonable and should be awarded in full.

## CONCLUSION

Here, the hours spent by Cullen and Dykman to litigate this case are justified given the complexity and duration of this six-year action involving novel issues of PPP loan fraud, fraudulent conveyance under New York's Debtor and Creditor Law, and the unique intersection of civil

litigation, federal civil investigation, and parallel bankruptcy proceedings. Those hours were spread across nearly six years and every phase of litigation, from pleadings through unnecessarily broad discovery and summary judgment. The fees were incurred at a discounted, fixed rate that was not changed during the six years of litigation and which ATC—a sophisticated, paying client—approved throughout. The result speaks for itself: this Court granted summary judgment in ATC's favor on every claim for which fees are recoverable.

Based on the foregoing, it is respectfully requested that the Court award ATC attorneys' fees and costs in the total amount of $1,180,014.20, which includes the 2.75% reduction for the fees, costs and expenses attributable to ATC's trademark claims, together with such other relief as the Court deems just and proper.

Dated: Albany, New York
October 13, 2026

CULLEN AND DYKMAN LLP

/s/ *Christopher E. Buckey*

Christopher E. Buckey, Esq. (BR #510106)
Kristen A. Davis, Esq. (BR #705147)
80 State Street, Suite 900
Albany, NY 12207
T: (518) 788-9440
F: (518) 689-9519
cbuckey@cullenllp.com
kdavis@cullenllp.com

*Counsel for Adirondack Trust Company*